Puckett v. Richardson.

6L 49
9L 528
1pi 668

## B. F. PUCKETT v. J. D. RICHARDSON et al.

1. CHANCERY PLEADINGS AND PRACTICE. *Injunction. Dissolution. Effect thereof. Revivor. Judgment creditor.* A money judgment the execution of which is enjoined by the judgment debtor by a bill in chancery, is not revived by the revivor of the injunction suit against the personal representative and heirs of the complainant, who dies pending the litigation in the supreme court. The final dissolution of the injunction leaves the judgment creditor to proceed on his judgment as if no injunction had ever been granted.

2. SAME. *Effect of dismissal by supreme court of a bill enjoining a money judgment. Not an adjudication upon rights of parties to the judgment, but in the nature of a procedendo. Revivor.* Where the judgment enjoined was rendered on purchase-money notes in a chancery case, a direction, at the end of the decree, of this court dismissing the injunction bill and dissolving the injunction, to the clerk and master to execute the decree in which the judgment was rendered, would not be an adjudication of rights, but a notification, in the nature of a *procedendo,* to the court below that it might safely execute its decree; and even if the direction were treated as a decretal order, it would not authorize the execution of the judgment without revivor.

3. EXECUTION. *Issued without revivor. Void as to realty.* An execution issued after the death of the judgment debtor, without a revivor, is void as to realty, and a sale of land under it is void also.

4. SAME. *Same. Same. Rights of judgment creditor who is purchaser.* The judgment creditor, in such a case, who has satisfied his judgment by a purchase of the land, is entitled to have the satisfaction set aside, the judgment revived, and any property of the debtor fraudulently conveyed by him in his lifetime subjected to the payment thereof.

5. DEED OF TRUST. *Reservation of homestead.* A conveyance of land in trust is not rendered void by a reservation of the grantor's homestead right therein.

### FROM RUTHERFORD.

Appeal from the Chancery Court at Murfreesboro. M. M. BRADFORD, Ch., presiding by interchange.

4—VOL. 6.

JOHN W. BURTON, E. D. HANCOCK and COOPER & FRIERSON for complainant.

E. H. EWING and PALMER & RICHARDSON for defendants.

COOPER, J., delivered the opinion of the court.

Bill filed on the 15th of April, 1879. The chancellor overruled a demurrer by the defendants, and they appealed.

The points made will be better understood by a statement of the facts historically.

On the 24th of April, 1874, R. T. Tompkins, as commissioner in the case of B. F. and W. A. Puckett, executors of Chas. Puckett, deceased, v. Hiram Judkins and others, and E. N. Dickson v. Hiram Judkins and others, then pending in the chancery court at Murfreesboro, recovered a judgment. for the benefit of the heirs of Chas. Puckett, deceased, against W. R. and J. F. Judkins as the executors of Hiram Judkins, and in proper person, and W. B. Lillard, for $12,354.46. The judgment was rendered on notes of Hiram Judkins as principal and W. B. Lillard as his surety, given for land sold in said cause. On June 4, 1874, W. B. Lillard, by bill filed that day against B. F. Puckett as executor of Chas. Puckett, deceased, and against B. F. Puckett and others as the heirs of Chas. Puckett, and R. T. Tompkins, enjoined the collection of the judgment. Afterwards, and pending the litigation under that bill, W. B. Lillard made several conveyances of his lands to his children, to

·J. D. Richardson and Wm. Jordan, all of whom are
·defendants to the present bill. The conveyance to
Richardson was by deed of trust, executed on the 2d
of March, 1875, containing the following clause: "It
is understood that I do not waive my right under
the law to homestead in said land, but the same shall
be secured to me in the most favorable manner pos-
sible, looking to the interest of my creditors." On
November 1, 1876, Lillard's bill was dismissed by the
·chancellor and the injunction dissolved, and Lillard
appealed to the supreme court. Pending the appeal
in that court Lillard died, and the cause was revived
·against his heirs, and R. D. Jamison his personal rep-
resentative. On February 23, 1878, after the revival,
the cause was heard by the supreme court, and the
·decree of the chancellor affirmed by dismissing the bill
and dissolving the injunction. The decree entered on
the minutes of the supreme court concluded by direct-
ing "the clerk and master at Murfreesboro to execute
the decree rendered on the 24th of April, 1874, in
the causes of B. F. and W. R. Puckett, executors,
*v.* Hiram Judkins and others, and E. N. Dickson *v.*
Hiram Judkins and others. The decree of the chan-
cery court was accordingly executed by a sale of cer-
tain lands therein directed to be sold, and applying
the proceeds of sale to the payment of the judgment
of the 24th of April, 1874, leaving a large balance
of that judgment still unpaid. On the 28th of De-
cember, 1878, execution issued upon the judgment, to
·collect this unpaid balance, against, to use the lan-
guage of the present bill, "the defendants in said

judgment, and against the heirs of .W. B. Lillard and' his administrator, R. D. Jamison, the 'revivor aforesaid having been had against them in the supreme court." The execution was levied on eight tracts of land, as the property of, and which were owned by W. B. Lillard, on the 24th of April, 1874. On the 3d of February, 1879, the sheriff sold the lands, by virtue of the execution and levy, and they were struck off to B. F. Puckett, executor of Chas. Puckett, deceased, for the use and benefit of the heirs of Chas. Puckett, at prices which, in the aggregate, amounted to $12,604.43, the balance due on the execution as of that day. The sheriff made to the purchaser a deed to the lands accordingly, which deed was duly proved and registered.

The present bill was filed by B. F. .Puckett, for the benefit of the heirs of Chas. Puckett, against the personal representative and heirs of W. B. Lillard, and against J. D. Richardson and Wm. Jordon. The bill claims that all of . the conveyances, of his lands made by W. B. Lillard after the 24th of April, 1874, were void as against the lien of the judgment of that date, and that the complainant acquired a superior title to said lands by virtue of the execution sale made within twelve months after the dismissal of Lillard's bill by the supreme court on February 23, 1878. It further claims that the trust deed of Richardson is also void in law, because of the reservation of the homestead right on its face. It further charges that the conveyances from W. B. Lillard to Thos. O. Lillard, W. G. Lillard and Wm. Jordan, three of the

defendants, are fraudulent in fact, made without con-
sideration, and for the purpose of defeating the grant-
or's creditors, and particularly the complainant, in the
collection of their debts.

The bill then states that defendant R. D. Jamison,
as administrator of W. B. Lillard, has suggested the
insolvency of Lillard's estate, but has taken no steps
to set aside the said conveyances for the benefit of
the creditors. The bill further alleges that the estate
is utterly insolvent.

The prayer is, in the first place, that complainant's
title to the land be declared valid under the judg-
ment lien and execution sale as aforesaid, and superior
to the titles acquired after the creation of the judg-
ment lien; that the claims of the defendants be set
aside as clouds on complainant's title; that he be put
in possession of the land, and have an account against
the several defendants for rents. In the event, how-
ever, that the court should be of opinion that he did
not acquire a good title to the land, then complain-
ant asks that the satisfaction of the judgment be set
aside; that the deeds of W. B. Lillard under which
defendants claim be set aside as void against his cred-
itors, and the lands subjected to the payment of the
debts of the estate generally, including the judgment
of the 24th of April, 1874.

The bill, in its first aspect, seeks to recover the
land in the possession of the defendant by virtue of
the better title of the complainant, the claim of title
being based on the enforcement of the lien of the
judgment of the 24th of April, 1874, within twelve

months after the dissolution of the injunction against its execution: Code, sec. 2983; *Planters' Bank* v. *Union Bank*, 5 Hum., 304; *Baugess* v. *Partee*, 1 Leg. Rep., 87. It is conceded that the judgment was taken upon purchase notes, and was in the nature of a judgment at law. It is further conceded that the judgment was never revived against the personal representative of Lillard, unless · by the revivor of the injunction bill and proceedings against Lillard's heirs and personal representatives in the supreme court. The argument of the learned counsel of the complainant is, that under the practice in this State, whatever it may be elsewhere, a judgment enjoined becomes a part of the case under the injunction bill, and an appeal from the chancellor's decree brings the judgment to the supreme court, and the judgment is revived by a revivor of the injunction suit. The logical result is, that if a judgment at law be recovered in Shelby county, and, upon execution issued thereon to Davidson county, the judgment be enjoined by bill filed in Davidson county, and the complainant (the judgment debtor) die, and the suit is revived against his administrator, the judgment in Shelby county is equally revived, and may be proceeded on, after the dissolution of the injunction, without further revivor. The argument is vested ·on the Code, sec. 4447, which, upon the dissolution of an injunction to stay proceedings on a judgment for money, authorizes a decree to be entered against the complainant and his sureties on the injunction bond required by the Code, secs. 4439, 4440. But the only object of that provision was to

authorize the same judgment by motion in the chancery case as the judgment creditor would be entitled to recover in a suit at law on the bond. It was never intended to sanction the revival of a judgment at law by the revivor of a suit in equity filed to enjoin that judgment, or to change the settled rule that the dissolution of the injunction in such case is simply to restore the creditor to the same position he occupied before the granting of the writ, namely, with the right to proceed to enforce his execution as if no injunction had been granted: High on Inj., 916.

If, in this particular case, the judgment enjoined was incorporated in the proceedings enjoining its execution, the appeal would have vacated it and destroyed the lien: *Smith* v. *Holmes*, 12 Heis., 466; *Northern* v. *Barnes*, 2 Lea, 610. If it was not so incorporated, the final dissolution of the injunction left the judgment creditor to proceed as if no injunction had ever been granted.

In this view, the judgment of the 24th of April, 1874, became, upon its rendition, a lien upon the land in controversy, and that lien could be enforced by a sale within twelve months after the dismissal of Lillard's bill and the dissolution of his injunction on the 23d of February, 1878.

The question remains, whether the sale could be validly made without a revivor of the judgment.

The complainant's counsel argues that authority to proceed without revivor was given by this court in its decree dismissing Lillard's bill, by directing "the clerk and master at Murfreesboro to execute the decree

rendered on the 24th of April, 1874, in the causes of B. F. and W. R. Puckett, Executors, *v.* Hiram Judkins and others, and E. N. Dickson *v.* Hiram Judkins and others." But the present bill tells us that the decree of the chancery court was accordingly executed, by a sale of certain lands therein ordered to be sold, and applying the proceeds of sale to the payment of the judgment of the 24th of April, 1874. It does not distinctly appear that the judgment was a part of the decree, and it was, in effect, a collateral proceeding by motion even if embodied in the decree. The decree of the supreme court was, however, merely a dismissal of the injunction bill, and the direction cited not a decree *inter partes,* but in the nature of a *procedendo* notification to the court below that it might safely proceed. Even if it could be considered as a decretal order, it would not enable the master in the chancery court, or the commissioner in whose name the judgment was taken on the purchase notes, to proceed to collect the judgment without a revivor against the personal representative and heirs, if a revivor was necessary. And the question is, whether the sale of the land under the execution without a revivor of the judgment was valid.

It is a curious fact that the precise point presented by the facts of this case has never, so far as we are aware, been directly raised and decided. If a revivor be necessary, the judgment, it would seem, must be first revived against the personal representative of the judgment debtor, and then, after the exhaustion of the personal assets, against the heirs, and the sale of the

land must then be made within the year.   If this is
the rule, where the necessary steps could scarcely ever
be completed within the year, the lien of the judg-
ment must either be extended by equitable constitu-
tion or lost to the creditor.

In the year 1821, the question came before this
court, whether the judgment creditor, after the lapse
of the period of time for which the judgment was a
lien on land, could revive his judgment against the
heirs without first proceeding to revive against the
personal representative, and it was held that he could
not: *Boyd* v. *Armstrong*, 1 Yer., 40.   In *Preston* v.
*Surgoine*, Peck, 72, which was finally decided in 1823,
an execution was issued within the year, and after
the death of the judgment debtor, but tested before
his death, and levied upon both land and personal
property.   As to the personal property, the court
held that the *fieri facias* bound personalty from its
teste, and the decision has been followed ever since:
1 Yer., 291; 7 Yer., 529; 9 Yer., 442; 4 Hum.,
367; *Harvey* v. *Berry*, 1 Baxt., 252.   The rule has
been extended to a similar case, where the judgment
creditor died before the issuance but after the teste of
the execution:   *Neil* v. *Gaut*, 1 Cold., 396.   "With
respect to the realty," said Haywood, J., in deliver-
ing the opinion of three out of four judges, "it is
bound by the judgment, and descends not to the heir,
but is in *custodia legis*, if the judgment be rendered
before the death of the defendant, against whom exe-
cution may issue any time before the expiration of a
year and day, after which time it cannot issue with-

out a *scire facias* against the heir. Therefore, the execution ought not to be set aside against the realty." Peck, 80.

Mr. Meigs, in his Digest, after quoting this language as the law under sec. 959, sub-sec. 2, expresses the opinion, in sec. 965, sub-sec. 3, that a contrary doctrine is established by *Overton* v. *Perkins,* 10 Yer., 328, and *Rutherford* v. *Read,* 6 Hum., 423. These cases hold that the levy of an execution on land does not vest the sheriff with any title to the land, and that a *venditioni exponas* tested after the death of the debtor, though based on a levy of an execution on land in the lifetime of the debtor, is void, and that an order of sale made after the death on a similar levy would be also void. There must be a revivor of the judgment against the personal representative, and after exhaustion of personal assets, a revivor against the heir, before a valid sale can be made under the levy: *Stockard* v. *Pinkard,* 6 Hum., 119; *Ashworth* v. *Demier,* 1 Baxt., 323; *Hewgly* v. *Johns,* 3 Baxt., 85; *Harman* v. *Hand,* 6 Baxt., 90. It has also been held, that where land is attached and the debtor dies before condemnation, the suit must be revived against his personal representative, and after exhaustion of the personal assets, against the heir, before the land can be sold: *Green* v. *Shaver,* 3 Hum., 139; *Perkins* v. *Norvell,* 6 Hum., 151. In all of these cases, the lien acquired by the levy of the execution or attachment will not be lost by the delay incident to the revivor, but, if properly pursued, eventually enforced in favor of the creditor if necessary to secure

the payment of his debt.    Because of this distinction,. there is a strong intimation by the judge who delivers the opinion of the court in *Bryant* v. *McCollum,* 4 Heis., 511, 517, that the later rulings are not in conflict with the doctrine of *Preston* v. *Surgoine.*

A *fieri facias* tested after the death of the judgment debtor, the question of judgment lien out of the way, is void: *Gwin* v. *Latimer,* 4 Yer., 22; *McMahan* v. *Glasscock,* 5 Yer., 304; *Mitchell* v. *St. Maxent,.* 4 Wall., 237.    Will the existence of the lien change the rule?.

In the somewhat analogous case of a creditor's right to redeem, after the debtor's death, land sold before the debtor's death under judicial process, our decisions are directly in conflict.    In *Elliott* v. *Patten,* 4 Yer., 10, it was held that the right to redeem descends on the debtor's death to his heir, and can only be reached, for the satisfaction of the ancestor's debts,. through the personal representative, and the exhaustion of the personal assets.    A creditor of the ancestor, by the recovery of judgment in his lifetime, cannot, therefore, redeem after the death of his debtor.    In *Bledsoe* v. *McCorry,* 2 Leg. Rep., 127, this decision was expressly overruled, and it was held that the judgment creditor could redeem without revivor.    The reason given is, that a contrary rule would be a virtual repeal of the statute giving the right of redemption in nearly all cases where the debtor dies pending the two years allowed for redemption.    The same reasoning would apply with even greater force to the more limited lien of the judgment, the statute ex-

pressly providing that the lien will be lost unless the land be sold within the twelve months after the rendition of the judgment or decree: Code, sec. 3982.

The question under consideration is, therefore, one of grave doubt, the solution of which is rendered more difficult because the very absence of authority shows that there has been a tacit acquiescence of the profession in the view suggested by Mr. Meigs in his Digest. In this very case, the learned counsel of the complainants have not even made the point, doubtless because they have considered it settled against them. The weight of authority, as we learn from Mr. Freeman, is that an execution tested after the death of the judgment debtor without a revivor is, as to that defendant, void: Freem. on Ex., sec. 35. He states that the debtor's death after the teste of the execution, would not affect the validity of the writ, citing, among a number of English and American cases, *Preston* v. *Surgoine*, which was precisely that case. But *Preston* v. *Surgoine* would not now be law, even to that extent, after the decision at this term to the effect that, as to land, the lien of an execution does not relate to its test, reversing my decision as chancellor to the contrary in the same case: *Anderson* v. *Taylor*, 1 Tenn. Ch., 436. Being incompetent to sit in the case, I took no part in its determination in this court. If *Preston* v. *Surgoine*, is not good law upon its own facts, it cannot be sustained to any extent.

The weight of the authorities, English and American, undoubtedly is that an execution tested after the

death of the judgment debtor is void: *Pennoir* v.
*Brace,* 1 Salk., 319; *Harward* v. *Phillips,* O. Br.,
473; *Erwin* v. *Dundas,* 4 How., 58; Freem. on Ex.,
sec. 35. Our own cases, as we have seen, are in
accord. A contrary ruling could only be rested on
the statute giving the lien, by holding that it was
intended to authorize the lien to be enforced within
twelve months, and that the intention could not other-
wise be carried out, for the reasons given in *Bledsoe*
v. *McCorry* in relation to the right of redemption.
If the question were a new one, this view would be
almost irresistible. But there can be no doubt that,
since *Boyd* v. *Armstrong,* the courts of this State have
considered the heir as becoming invested, upon the
death of the ancestor, with the title to lands descend-
ed, and that it was necessary he should in some form
have a hearing before his estate could be subjected to
the debts of his ancestor. The lien is strictly statu-
tory, and the requirements of the statute should be
complied with, or shown to be impossible or useless:
*Harrison* v. *Wade,* 3 Cold., 505; *Rainey* v. *Frierson,*
Nashville. 1880. No effort was made to revive in
in this case, although two terms of the court inter-
vened between the dissolution of the injunction and
the expiration of the lien. The demurrer to the bill
is therefore well taken, so far as it seeks to set up
title under the execution sale of February 3, 1879,
and the chancellor's decree will be to that extent re-
versed.

But if the sale be void, the satisfaction of the
judgment should, of course, be set aside, and the bill

in this aspect contains clear equity not met by the demurrer. The complainants are entitled to have the judgment revived against the personal representative and heirs of W. B. Lillard, for any relief the facts set out may justify. And they insist that the deed to Richardson is void because of the homestead reservation made on its face. They rely, in support of this position, upon the authority of *Sugg* v. *Tillman*, 2 Swan, 208. The conveyance in that case was of all of the grantor's stock, farming utensils, household and kitchen furniture, and provisions, reserving so many of these articles as the grantor was allowed by law to retain exempt from execution, and the reservation was held to vitiate the deed. The reason upon which the decision rests is, that no title to any of the articles could pass to the grantee because of the uncertainty as to what articles were intended to pass. Until selection made, the grantee had no title to any particular articles upon which he could sustain an action: *Farguharson* v. *McDonald*, 2 Heis., 404, 416; *Williamson* v. *Steele*, 3 Lea, 530. No such difficulty exists in this case. The title to the whole land passed to the grantee, subject to the grantor's right of occupancy under the homestead law. A sale of land or personalty subject to a life estate, or more limited interest in the grantor, is undoubtedly good: *Caines* v. *Marley*, 2 Yer., 582.

The complainants, upon the setting aside of the satisfaction of the judgment, expressly charge that the conveyances by W. B. Lillard to Thos. O. Lillard, W. G. Lillard and Wm. Jordan, three of the defend-

ants, were made without consideration, and for the
purpose of hindering creditors, and are fraudulent in
fact. Treating the complainants as entitled, upon their
allegation, to set aside the satisfaction of their judg-
ment, they would have the right upon the debt,
whether the judgment was revived or not, to file a
bill to reach property fraudulently conveyed by the
debtor: *Armstrong* v. *Dunlap,* 3 Lea, 191. Their
right to revive the judgment is also clear, and their
bill is so framed as to subject the property for the
general benefit of the creditors. And even if it looked
only to the interests of the complainants, it would be
good: *Shea* v. *Mabry,* 1 Lea, 345; *Rains* v. *Rainey,*
11 Hum., 261.

The demurrer will be sustained so far as the bill
seeks relief upon the basis of the validity of the ex-
ecution sale, and because of the reservation of the
homestead right in the deed to Richardson, and over-
ruled in other respects, and the cause remanded for
further proceedings. The costs of this court will be
paid one half by the complainants and the other half
by the defendant.

On petition for rehearing, COOPER, J., delivered
the following opinion:

The complainants have filed a petition for a re-
hearing, in which it is conceded, that on the case
made by the bill, the petitioners cannot probably gain-
say the conclusion reached by the court on the orig-
inal hearing. The petition, however, asks the court

not to enter a final decree in accordance with that conclusion, but either to remand the cause for amendment without precluding the complainant from again making any question in the case, or to dismiss the bill without prejudice. This request is confessedly based, not on anything appearing in the record, but upon outside facts stated in the petition and exhibits thereto. These facts, it is insisted, show that the judgment under which the land in controversy was sold was rendered in the chancery case appealed by W. B. Lillard to this court, and after his death revived against his heirs and personal representative.

We have repeatedly held that a remand of a cause by this court for amendment, either under the Code, sec. 3170, or the practice of the court, must be based on the record: *Fogg* v. *Union Bank,* 4 Baxt., 539; *McKinley* v. *Sherry,* 2 Lea, 200; *McEwen* v. *Gillespie,* 3 Lea, 204. The reason is, that to act on matter not in the record, or plainly suggested by it, would be the exercise of original and not appellate jurisdiction. For, it would be manifestly unjust to renew or prolong litigation on *ex parte* statements, and if the other side were heard and the matter determined upon the weight of evidence, it would be clearly the exercise of original jurisdiction. The Code, sec. 3170, merely embodies the previous rule of practice of the court: *Evans* v. *Wells,* 7 Hum., 568.

This court has, it is true, adopted the practice of settling rights upon demurrer, in view of the provisions of the statute law on the subject, to narrow litigation and diminish expense, and it might depart

from the rule in a case clearly justifying the departure: *Riddle* v. *Mottley*, 1 Lea, 468.   No such case can be held to exist where the correctness of the conclusion reached is fairly conceded, and where we are ourselves satisfied with that conclusion.

We have the less reluctance in adhering to the rule in this case because the demurrer has been overruled in part, and the cause remanded to the court below for further proceedings.   In that court the complainants may, under our statutes of jeofails and the liberal practice of the chancery court, amend in any way they may be advised, subject only to the decision of this court upon the case presented by the bill before us.

The application must be dismissed with costs.