## Ex Parte W. N. Hobbs.

### *No. 193. Decided June 24.*

1. **Fugitive from Justice — Interstate Extradition — Second Executive Warrant of Arrest.**—Where a fugitive from another State has been extradited under legal requisition by the Governor of the asylum State, and after his removal beyond the limits of said State by virtue of the said writ of extradition, makes his escape and returns to the asylum State, *held*, the Governor of said latter State may, when credibly informed of that fact, issue second executive warrant for his arrest without awaiting another requisition from the Governor of the demanding State.

2. **Same — Habeas Corpus.** — When an extradited fugitive makes his escape and accomplishes his return to the asylum State, the extradition agent of the demanding State can not follow him in hot pursuit and effect his recapture by force and violence, but should report such escape to the Executive of the asylum State and obtain his assistance, and no reason is perceived why the Governor should not act in the issuance of another warrant upon information received from said agent, nor is it perceived how any injury to the fugitive is likely to ensue, inasmuch as his remedy by habeas corpus is amply sufficient to have the question of the legality of his second arrest and detention determined by the courts.

3. **Practice where an Escaped Extradited Fugitive is Held for a Crime Committed in the Asylum State After His Escape—Jurisdiction.**—An extradited fugitive, having made his escape, returned to the asylum State and shot one of the posse attempting his rearrest. He was arrested and bound over to await his trial in the State's court for assault to murder. Pending this prosecution, he was arrested under second executive warrant for the extraditable crime. *Held*, on habeas corpus to determine the legality of this second arrest, that while the same was legal and valid, yet the relator being already subject to the jurisdiction of the Texas courts for assault with intent to murder, that jurisdiction would take precedence over the extradition proceedings, and relator would not be turned over to the agent of the demanding State until after final disposition of the case for assault with intent to murder.

APPEAL from District Court of Grayson. Tried below before Hon. T. J. BROWN.

On the 9th day of May, 1893, the applicant presented his petition to the Hon. T. J. Brown for the writ of habeas corpus. It set up, that he was illegally restrained in his liberty by J. L. Moulden, sheriff of Collin County, and one Hiram Church, who was the agent for the State of Tennessee. That he was restrained by virtue of a warrant issued by J. T. Andrews, a justice of the peace in Collin County, upon a complaint charging him with an assault to murder one Oats. That an examining trial had been commenced, but not concluded, before said justice, and that the case had been set over; and set up as full as could be done the proof which had then been taken, and asked that it be considered as part of the application, and that Andrews be ordered to send it up. That the applicant had been illegally arrested, without any warrant whatever, for

a reward of $300 offered by certain persons in Tennessee, and that the alleged assault upon Oats was a pretense, and occurred in the applicant's necessary self-defense, while the said Oats and seven others were attempting to arrest him, without warrant, for said reward. That in February prior one Hendricks, a constable, and one Barnett had, without warrant, arrested the applicant for said reward from Tennessee, and that the Governor of Texas had issued his warrant afterwards, and that under it the applicant had been extradited and taken by the agent therein named for the State of Tennessee, and had been carried outside of and beyond the limits of the State of Texas. That on, to-wit, the 5th day of May, 1893, the Governor of Texas had issued another warrant of arrest for the purpose of again extraditing the applicant under it. That such warrant was null and void, and was contrary to the Constitution and laws of the State, and contrary to the Constitution and laws of the United States, and of the rights conferred on the applicant by such Constitution and by section 5278 of the Revised Statutes of the United States, in this, that the Governor of Texas did not have or require any proof whatever when he issued the last warrant, but acted upon the original proof and papers upon which he had so issued the first warrant, under which the applicant had been received by such agent for the State of Tennessee and had been carried outside of the State. That the Governor of Texas, in issuing the last warrant, had not required any such proof as the law demanded, but only acted upon parol testimony. That the said Hendricks and Barnett were present at the alleged assault on said Oats, and were with said Oats and five others, assisting in making such unlawful arrest.

On the 9th day of May, 1893, Judge Brown heard the application, received certain testimony over appellant's objection, and to which he took a bill of exceptions, and made his order remanding the applicant into the custody of J. L. Moulden, to be by him held until the charge and proceedings of The State of Texas v. W. N. Hobbs, pending before said Andrews, the justice of the peace in Collin County, is disposed of, when the said Moulden was to deliver the applicant to said Church under the warrant so issued by the Governor of Texas May 5, 1893. To which judgment the applicant then and there excepted and gave notice of appeal to this court.

*H. C. Mack* and *Throckmorton & Garnett*, for appellant.—1. The Governor of a State in issuing his warrant of extradition acts in a ministerial and not in a judicial capacity. Ex Parte Kentucky v. Dennison, 24 How., 66; Roberts v. Reilly, 116 U. S., 80; Wilcox v. Nolze (Ohio Sup. Ct.), referred to in 1 Crim. Law Mag., 125.

2. The State courts have the authority to issue the writ, and to inquire into the grounds upon which any person within their respective territorial limits is restrained of his liberty, and to discharge him if it be ascer-

tained that such restraint is illegal; and this notwithstanding such illegality may arise from a violation of the Constitution or the laws of the United States. Robb v. Connolly, 111 U. S., 639, 640; Cook v. Hart, 146 U. S., 183; Roberts v. Reilly, 116 U. S., 80.

3. The courts have jurisdiction to interfere by writ of habeas corpus, and to examine the grounds upon which the executive warrant for the apprehension of the alleged fugitive from justice from another State is issued; and in case the papers are defective and insufficient, to discharge the prisoner. Lawrence v. Brady, 56 N. Y., 183; People v. Donahue, 84 N. Y., 441.

4. Section 5278 of the Revised Statutes of the United States only permits the Executive of a State to issue his warrant for the rendition of a fugitive upon the certificate of the Governor or Chief Magistrate of the demanding State, and the Governor can not act upon evidence from any other source whatever.

5. The warrant of rendition issued by the Governor of Texas, of date May 5, 1893, which was issued upon parol testimony furnished him from a source he deemed reliable, is an absolute nullity, and is violative of the rights secured to the applicant under article 14 of articles in addition to and amendatory of the Constitution of the United States, as well as violative of section 5278 of the Revised Statutes of the United States.

6. If every person in the State of Tennessee other than His Excellency Pete Turney, the Governor thereof, had informed the Governor of Texas that the applicant was a fugitive from justice of that State, he could not legally act on such information, and his warrant of rendition issued in such manner was in violation of the rights, privileges, and immunities guaranteed to the applicant under article 14 of articles in addition to and amendatory of the Constitution of the United States, as well as in violation of the Act of Congress passed February 12, 1793, in relation to fugitives from justice.

7. When the Governor of Texas issued his warrant of rendition in February, 1893, and the agent for the State of Tennessee received the applicant into his possession and carried him beyond the limits of this State, the warrant was then functus officio, and it would require another demand made by Governor Turney, in accordance with the provisions of section 5278 of the Revised Statutes of the United States, before the applicant could be legally rearrested and extradited.

8. When the accused was arrested in February and delivered to the agent of the State of Tennessee, and was by such agent taken outside of the limits of this State, the warrant of the Executive of Texas had spent its force. Cook v. Hart, 146 U. S., 194.

9. The words used by Congress in the Act of February 12, 1793, that the rendition of fugitives might be made on certain evidence " certified as authentic by the Governor or Chief Magistrate of the demanding

State,'' is equivalent to the expression that no other evidence should be received.

10. The Chief Executive of a State can not issue a warrant of extradition for the arrest of a fugitive from justice on the ground of public policy. His only power to extradite a person from his State must be found in the Constitution and laws of the United States. Ex Parte Morgan, 20 Fed. Rep., 298.

11. The removal of a person from a State as a fugitive from justice is a matter of the highest importance, and can not be made upon less evidence of the party's guilt and flight than would authorize a warrant and arrest in an ordinary case. Re Doo Woon, 18 Fed. Rep., 899.

12. The mere fact that legal evidence existed that a person was charged with an offense against the law of Tennessee in February, is no evidence that the same exists on the 5th day of May afterwards, particularly where the person had been surrendered under the law to that State in February, and had been carried outside of the limits of Texas. The presumption will be indulged that he had been tried there and acquitted or tried and convicted, and had paid the penalty or had been pardoned, or that the indictment against him had been nol. prossed, and that the case was at an end.

13. The court erred in receiving parol evidence that the applicant escaped in Mississippi en route to Tennessee, over the applicant's exception made to such evidence on the trial.

We submit further: (1) The Constitution of Texas, article 1, section 10, guarantees to the applicant a speedy public trial by an impartial jury. Articles 314 to 316, inclusive, of the Code of Criminal Procedure, require the evidence on the examining trial to be sent to the grand jury which assembles next after the examining trial is had, whether the accused be discharged or admitted to bail. Articles 377 to 383, inclusive, of the Code of Criminal Procedure, give the applicant the right to appear when the grand jury is being empanelled, to challenge the same. And we submit that the Governor of Texas could not waive the applicant's rights under the law, and order him extradited, after the machinery of the law had been put in motion and the examining trial commenced.

(2) The appellant, under said laws, would have the right to be present and make his defense until, at least, the grand jury shall have acted in the matter; and if an indictment is returned by them against him, then until the same is at an end.

(3) Under the law of Texas the examining trial is the mode by which the State preserves its evidence; and the accused being then and there confronted with the witnesses, is bound by such testimony in case of the death or removal of the witnesses beyond the jurisdiction of the court; and to permit the State to commence the examining trial and preserve its proof, and then order the applicant out of the State by extradition pro-

cess before the charge here is at an end, and then to bring him back into this State at such time as it may suit the Tennessee authorities to surrender him, and confront him with such proof upon the charge of assault to murder Oats, when his witnesses may be dead or gone, would not be a trial by due process of law.

(4) The charge here against the applicant being a felony, and the State having commenced the prosecution thereof in the examining court prior to the time the Governor issued the warrant of rendition herein, the applicant will be kept in Texas until such time as the charge against him here is at an end.

(5) Where the defendant is already in custody, or under recognizances for trial in the State on which the requisition is made, the requisition will be refused, at least until the defendant's discharge. 3 Whart. Crim. Law, sec. 2965; Whart. Confl. Law, sec. 845; Whart. Crim. Pl. and Pr., 9 ed., sec. 33.

All of which is respectfully submitted; and we insist that the warrant of rendition is a nullity, that it is not in accordance with the rules of the law, and that the order made by the district judge should be changed and the applicant discharged when he shall have given bond for his appearance to the District Court upon the charge of assault to murder said Oats.

No brief on file for Respondent.

SIMKINS, JUDGE.—Relator was arrested under an executive warrant issued by the Governor of this State, on the requisition of the Governor of Tennessee, for the crime of murder, committed in the State of Tennessee. This executive warrant was issued in February, and was duly executed in Collin County by the arrest and delivery of relator to one C. D. Heard, the duly authorized agent of the State of Tennessee. The said agent conveyed the said relator out of the limits of the State, and while on his way to Tennessee, to-wit, at Meridian, Mississippi, relator escaped from the custody of said agent and returned to Texas.

Afterwards, to-wit, on the 7th day of April, 1893, upon the representation of the fact of the escape, and at the request of the agent, a second executive warrant for the arrest of relator was issued by the Governor of Texas, and relator was arrested thereunder. Prior to the issuance of the second warrant, to-wit, on the 22nd of March, 1893, an attempt was made to arrest relator, in which one D. H. Oats, one of the posse attempting the arrest, was shot and wounded; and upon the 7th of April thereafter a warrant for his arrest was issued by one A. T. Andrews, justice of the peace, charging relator with an assault with intent to murder said Oats. Relator was arrested, and is now held, under this warrant, being bound over in the sum of $2000, and was so held at the time of the service of

the executive warrant aforesaid. On the 9th of May, 1893, the relator presented his petition for a writ of habeas corpus before the Hon. T. J. Brown, judge of the Fifteenth Judicial District, alleging he was illegally restrained of his liberty by J. L. Moulden, sheriff of Collin County, and one Hiram Church, who is the agent of the State of Tennessee; that the examining trial before the justice of the peace of Collin County, to-wit, A. T. Andrews, for the assault upon Oats, is not yet concluded; and the relator claimed his discharge upon the ground, (1) that so far as the charge of assault with intent to murder is concerned, it is shown by the testimony set forth in said petition to have been done in his necessary self-defense, as the posse was attempting to arrest him without legal authority, and began to fire upon him without provocation or necessity; (2) that so far as the executive warrant is concerned, the Governor of Texas, having issued one warrant upon the requisition of the Governor of Tennessee, had no authority to issue another warrant, and that he could not do so upon parol evidence; and the first warrant being functus officio, by the delivery and removal of the relator beyond the limits of the State, the Governor had no right to issue a second warrant without new requisition. Upon hearing the application, the district judge ordered relator to be held by the sheriff of Collin County until the charge against relator, pending before Andrews, justice of the peace, is disposed of, and then the relator should be delivered to Hiram Church, agent of Tennessee, in obedience to the requirements of the executive warrant of the Governor of Texas. From these judgments relator appeals to this court.

We can not concur in the proposition, that when a fugitive from justice is delivered to the agent of the demanding State, and is carried by him out of the limits of the asylum State, the power and duty of its Governor absolutely ceases, and there can be no second delivery without a new requisition, however obvious the necessity. It would certainly be a most technical construction of a solemn duty imposed by the highest law in the land to hold that a fugitive from justice, who escapes from the agent while in transit, a short time after delivery, and returns to the State, can not be rearrested by an alias warrant of the Governor, if the first has been returned executed. The question is not affected by the escape being made within or without the limits of the asylum State, if in fact the fugitive is again found in the State after the escape. The Executive of the asylum State has already, under the Constitution and acts of Congress, been duly notified of the pendency of an indictment against the fugitive, charging him with crime, and demanding his extradition, and by the act of delivery the person so delivered is solemnly adjudged to be a fugitive from justice, subject to be returned to the demanding State. There is, indeed, no law prescribing what is to be done in case of interstate extradition where there is an escape, nor how nor by whom the Governor of

the asylum State is to be notified of the fact of the escape. But it does not follow that the Governor may not be credibly notified of the fact, and that it is not in his power to order the arrest. In fact, being the only authority which can order the arrest, it would seem to be his duty to do so. While it is right that he be notified, to prevent an illegal recapture, yet, where he is satisfied that there has been an escape, a due regard for the administration of the criminal law, and the security and welfare of the different States, demands that a person committing crime in one State should not find asylum in another. The agent appointed by the demanding State to receive the fugitive can not bring an armed force to assist in arresting the fugitive.

No State can lawfully exercise its powers of arrest in the territory of another State. Representing a sovereign State, whose laws have been violated, he comes simply to receive, and looks to the Executive of the asylum State to deliver, in obedience to the requirements of the Federal Constitution and laws. After delivery he may use all precaution to prevent escape and insure safe carriage of the prisoner, and may follow in hot pursuit of recapture; but if an escape is in fact accomplished, and the fugitive returns to the asylum State, the agent may not gather an armed force, and arrest by violence in said State, but should, before, report such escape to the Executive, and obtain his assistance, and we can see no reason why the Governor should not act on such information. There can be no possibility of an injury. The prisoner has a right, by habeas corpus, to show that his detention is illegal; that he has been acquitted or discharged by the court of the demanding State; or other cause entitling him to discharge. 7 American and English Encyclopædia of Law, title "Extradition," page 642, section 18, says: "If, after the fugitive has been delivered up to the demanding State, he escapes, by forfeiting his bond or otherwise, and again becomes a fugitive from justice, the Governor may order a second arrest and delivery."

2. But an important question arises in this case, out of the fact that pending the execution of the warrant of the Governor, the relator became subject to the jurisdiction of this State, by being charged with the commission of a felony, and was under arrest and examination for a violation of the laws of Texas when the second warrant of arrest issued by the Executive of this State was executed upon him.

In Taylor v. Taintor, 16 Wallace, 366, the court says: "When a demand is properly made by the Governor of one State upon the Governor of another, the duty to surrender is not absolute and unqualified. It depends upon the circumstances of the case. If the laws of the latter State have been put in force against the fugitive, and he is imprisoned there, the demands of those laws may first be satisfied." By a violation of the laws of Texas, while a fugitive, the relator has been brought within the jurisdiction of our own courts. This jurisdiction, being operative, takes

precedence of the one claimed until its purpose shall have been completed. The Governor of this State has no power, by the issuance of warrant, to arrest its action. Spear on Extr., 444; 7 Am. and Eng. Encycl. of Law, title "Extradition," 143, and note 2. It has been held by this court, that where relator is held under and by virtue of an extradition warrant, he is not entitled to bail. Ex Parte Erwin, 7 Texas Cr. App., 296. The relator is held under arrest under both the warrant of the justice of the peace and the executive warrant, and while the first is bailable, the second is not so. Therefore, while the relator may be kept until the final disposition now pending against him in this State, he can not be bailed; but it will be the duty of the sheriff to hold him in custody, and notify the State agent of Tennessee when the cause is finally decided, and deliver him to said agent, in pursuance of the executive warrant. The judgment of the District Court is reversed, in so far as it orders the sheriff to deliver the relator to the agent of Tennessee after the determination of the cause in the Justice Court; and it is hereby ordered, in case relator is discharged by said justice, on hearing, that he be delivered to said agent, but if bound over by said justice, that he be held until final disposition of said cause, and then delivered to the said agent, in accordance with this judgment.

*Ordered accordingly.*

Judges all present and concurring.