(34 Misc. Rep. 85.)

PEOPLE ex rel. GALLAGHER v. HAGAN, Warden of City Prison.

(Supreme Court, Special Term, New York County. February, 1901.)

EXTRADITION—DISCRETION OF GOVERNOR.
  It is no defense to a warrant of extradition that the prisoner has been
  convicted of a crime in the state, but has been bailed during his appeal,
  and that he cannot be extradited until he has served his sentence, or until
  he has been finally acquitted, as the governor of the state may waive the
  right of the state to punish the prisoner for a crime committed in the
  state.

Application by the people, on the relation of Patrick Gallagher, for
a writ of habeas corpus to James J. Hagan, warden of the city prison,
to procure release from custody under a warrant of extradition.

Amos H. Evans, for relator.
Eugene A. Philbin, Dist. Atty., for respondent.

SCOTT, J. The relator, under the name of John Irwin, was on
November 15, 1900, convicted in this county of grand larceny in the
second degree, and sentenced to serve three years and six months in
the state prison. He appealed from the judgment of conviction, ap-
plied for and procured a certificate of reasonable doubt from a justice
of this court, and was admitted to bail pending the determination of

his appeal. He had been previously indicted in the state of New Jersey for larceny under the name of John Hill, and on the 28th day of January, 1901, was arrested under a warrant issued by a magistrate of this city under section 828, Code Cr. Proc., to await the result of an application to the governor for a writ of extradition. On February 4, 1901, a requisition for his extradition was duly made by the governor of the state of New Jersey, and thereupon the governor of this state issued his warrant of arrest and delivery. The relator by this proceeding seeks his release from custody under the warrant of extradition, claiming that, inasmuch as he is now under conviction and sentence in this state, and thereby owes this state, in satisfaction of his crime, a term of service in the state prison, he cannot be sent into another state for a crime committed against its laws until he has served out his term of imprisonment here, or been finally acquitted of the charge against him.

That the state need not surrender, upon requisition of another state, a prisoner held in actual custody, either under civil process to secure the payment of a debt, or under criminal process to answer or suffer punishment for a crime, seems to be well settled. In re Briscoe, 51 How. Prac. 422; In re Troutman, 24 N. J. Law, 634; Taintor v. Taylor, 36 Conn. 242; Taylor v. Taintor, 16 Wall. 366, 21 L. Ed. 287. As was said by the supreme court of the United States in the last case:

"Where a demand is properly made by the governor of one state upon the governor of another, the duty to surrender is not absolute and unqualified. It depends upon the circumstances of the case. If the laws of the latter state have been put in force against a fugitive, and he is imprisoned there, the demands of these laws may first be satisfied. The duty of obedience then arises, and not before."

The fact that in this particular case the relator, although under conviction, is actually at large on bail, does not, in my opinion, affect the application of the rule. He still owes to this state a debt of imprisonment as a punishment for the crime against the laws of this state of which he has been convicted. He is still theoretically in the grasp and custody of the law. Having given bail, he is merely regarded as delivered into the custody of his sureties, and their dominion over him is but a continuance of his original imprisonment. Taylor v. Taintor, 16 Wall. 371, 21 L. Ed. 287. It is not the fact of actual physical incarceration, but the fact that the person sought to be extradited has been held to answer for a debt due to the law of the state in which he is found, that justifies the refusal of that state to surrender him until its demands upon him have been satisfied. I have no doubt, therefore, that the proper authorities of this state could have lawfully refused to deliver up the relator to the state of New Jersey until he had served the term of imprisonment to which he has been sentenced, or, if his present conviction be reversed, until he had been finally acquitted of the crime with which he stands charged in this state. That, however, is not the precise question presented upon this application, because it is the person charged with crime, and not the state authorities, who insist that he must be kept here to answer for the crime committed in this state, and that he

cannot be sent to New Jersey to answer for the crime committed there. I do not think that he can be heard to make this objection to his extradition. If he has committed offenses against the laws of two states, it is not for him to choose in which state he shall be held to answer. Naturally he would always choose that in which the punishment would be the lighter, or the chances of conviction the least. In Roberts v. Reilly, 116 U. S. 80, 6 Sup. Ct. 291, 29 L. Ed. 544, this very question arose. Roberts, a fugitive from the state of New York, was arrested in Georgia upon an extradition warrant issued by the governor of that state. He averred that the acts with which he was charged constituted a crime against the state of Georgia, as well as against the state of New York, and therefore that he should be held to answer to the laws of Georgia before he was sent out of that state to answer to the laws of another state. This contention was overruled by the supreme court of the United States, which held that even in such a case it was competent for the state of Georgia to waive the exercise of its jurisdiction by surrendering the fugitive to answer to the laws of New York. In the very nature of things, it is desirable that the power should rest somewhere in the state to refuse to give up a prisoner until he has satisfied the claims of the state against him, or to waive the enforcement of those claims, and surrender him to another state for the satisfaction of its laws. If such power did not exist, a criminal might easily evade or postpone his just punishment for the gravest of crimes committed in one state by the commission of a crime of much less magnitude in another. If a state may waive the enforcement of its claims upon a prisoner, in favor of the claims of another state upon him, it becomes important to determine who is authorized to act for the state in that regard. Herein is to be observed a distinction between persons held under civil, and those held under criminal, process. In the first case the individuals having, under the laws of this state, the right to resort to the body of their debtor in satisfaction of their claims, are entitled to be protected in that right, and it is a proper function of the judicial authorities of the state to protect the rights of creditors even to the extent of preventing the extradition of a debtor until the claims against him, enforceable under our laws by process against his body, have been satisfied. Such were the Briscoe and Troutman Cases, cited above. In such a case there can be no doubt that, if the creditors see fit to consent to the debtor's enlargement, he would at once become amenable to the writ of extradition. In the case of a person held for an offense against the criminal law, there are no private rights to be considered and no claims to be satisfied except those of the state. The question whether or not those claims ought or ought not to be waived in favor of the claims of a sister state is no longer a question for the judicial, but for the executive, branch of the government. Indeed, the determination of the question, in the case of a prisoner convicted of a crime as is the relator, rests necessarily with the governor; for even if the court should deem it to be its duty to release a convicted prisoner from the operation of a writ of extradition, because he owed the state a term of imprisonment in consequence of his conviction, the governor, if for any reason he deemed the

extradition to be desirable, could by a pardon wipe out the conviction, the debt due to the state, and the only obstacle to the enforcement of the writ. So, in the case of a prisoner held to answer, but who had not been convicted, the district attorney could remove all obstacles to his extradition by procuring a dismissal of the indictment. Practically, therefore, it rests with the executive power of the state to determine whether a person who has committed crimes both in this state and in another should be held here to answer before he is extradited, or be extradited without considering the charge against him here, and in determining that question the offender has no voice, and will not be heard. In the present case the governor, by issuing the writ of extradition, has determined that this relator should be sent to answer for his crime in New Jersey. With his reason for that determination the court has nothing to do. If because of the relator's use of different names the writ was issued in ignorance of the fact that he stood convicted of crime here, the governor may, if he sees fit, revoke his warrant. So long as it stands unrevoked, however, it justifies the relator's detention. The writ must be dismissed.

Writ dismissed.