STATE *ex rel.* B. F. GUY *v.* LON FOSTER, CHIEF OF POLICE OF CITY OF NASHVILLE.*

(*Nashville.* December Term, 1929.)

Opinion filed, March 1, 1930.

*On right to prove absence from demanding state or alibi on **habeas corpus** in extradition proceedings, see annotation in 51 A. L. R., 797; 12 R. C. L., 1248; R. C. L. Perm. Supp., p. 3290.

JOHN W. HILLDROP, for plaintiff in error.

CHAS. GILBERT, for defendant in error.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

This is a *habeas corpus* proceeding by which the relator, B. F. Guy, resists being extradited to Michigan to answer a charge of receiving stolen property on December 1, 1928, his contention being that he was in Nashville on that date, and hence could not have committed the crime. No question as to constructive presence and actual absence is presented in this case. The trial court, after hearing the evidence, dismissed the petition, and permitted both parties to appeal.

Is such a case appealable? We hold that it is.

The title of Chapter 157, Acts of 1887, is as follows:

"An Act giving to parties in *habeas-corpus* cases the right to appeal to the Supreme Court."

The body of the act conforms to the title, with the following exception: "Provided, This Act shall not apply to parties held in custody in criminal cases."

In construing this proviso this court, in *Vanvabry* v. *Staton*, 88 Tenn., 339, said:

" . . . We think this proviso applies only to persons held in custody in a '*criminal case*'—that is, in a *pending* case.

"The words 'criminal cases' apply to one held upon a criminal charge, against whom there is a pending case. In such cases an appeal would only operate to delay a trial and continue the imprisonment. One in custody upon a judgment of conviction is not one held in custody in a 'criminal case' within the meaning of the proviso."

This necessarily means a case pending to which this State is a party. The law-making body of Tennessee does not legislate with respect to crimes in other States, nor regulate the procedure by which such criminals are tried. The object of the provision in question was to expedite the trial of criminal cases in this State. This court has heretofore entertained such appeals without any question of jurisdiction being raised. *Herbert* v. *Coleman,* 3 Civ. App., 316 (Affirmed by this court) ; *State ex rel.* v. *Selman,* 157 Tenn., 641.

On the question of absence from the demanding State, the decided weight of authority, and the best reasoned cases, hold that in such a proceeding the relator may prove his absence at the time of the alleged crime. 29 Corpus Juris, 76; 12 R. C. L., 1247-1248; 51 A. L. R., 798-804.

In *Herbert* v. *Coleman, supra,* it was said:

" . . . but some Courts have gone further than this, and the holdings of these Courts as to the scope of a proceeding, such as that at bar, as set out in Church on *Habeas Corpus* (2 Ed.), sec. 486, is as follows:

" 'The prisoner, in a case of interstate rendition, may, when he invokes the aid of the judicial department of the government to determine the legality of his imprisonment, have the executive action reviewed, as it is not final. And the inquiry, on *habeas corpus,* is not limited to the sufficiency of the papers and the identity of the prisoner, as is sometimes held. The prisoner may, of course, show, on this writ, that the papers on which his extradition is founded are insufficient; and that he is not the identical person wanted; but he may also show that he is not "charged with crime" against the law of the demanding State; and may show that his arrest is illegal,

by parol proof that he was not corporally present in the demanding state at the time the crime was alleged to have been committed—in other words, that he is not a fugitive from justice. He may also show that he has been enticed within the jurisdiction of the demanding State by device, strategem, or fraud for the purpose of being served with civil process.'

''We think the better considered cases and the weight of authority are in accord with this view.''

██ As to the character of evidence necessary to author- ize a discharge, the United States courts, and quite a few of the state courts, hold that the proof must ''clearly and satisfactorily'' show that the prisoner is not a fugitive from justice. We adopt this rule, and refer to 51 A. L. R., pages 804-810, where the cases supporting it are collected.

In *Ex parte Germain* (Mass.), 51 A. L. R., 789, it ap- pears that the relator admitted being in Missouri four days prior to the date on which the crime was committed. In commenting upon this fact, the court, speaking through Chief Justice Rugg, said:

''It is enough if there is evidence that the person de- manded was in the demanding State 'in the neighborhood of the time alleged' (*Strassheim* v. *Daily,* 221 U. S., 280, 286, 55 L. Ed., 735, 738, 31 Sup. Ct. Rep., 558), or 'at or about that time' (*Hogan* v. *O'Neill,* 255 U. S., 52, 55, 65 L. Ed., 497, 499, 41 Sup. Ct. Rep., 222). Confessedly the affidavit showed such presence of the demanded person.''

██ With respect to the facts, the relator testified that he was a taxi driver; that he drew his wages in Detroit on November 28th, came to Nashville, spent that night with his aunt, Mrs. Rice, had Thanksgiving dinner with his mother the next day (the 29th) in Nashville, and re-

turned to Detroit in December, but sometime after the date of the alleged crime. He admitted having served a term in the Federal Prison in Atlanta upon a conviction for transporting a stolen car.

The wife of relator testified that she lived in Detroit with him; that she and relator came to Nashville the latter part of November, had Thanksgiving dinner with his mother, and returned to Detroit after December 2d.

The mother testified that she had relator and his wife for dinner on Thanksgiving; that he arrived from Detroit a few days before Thanksgiving; and that he was in Nashville until late in December.

Mrs. Rice testified that relator and his wife spent the night before Thanksgiving at her home in Nashville, and that she frequently saw relator, and he was not in Michigan on December 2, 1928.

This testimony is weak, contradictory, and is not clear and satisfactory. If the relator drew his salary on the 28th, it was impossible for him to have spent that night with his aunt in Nashville, unless he made the trip by airplane, which is not claimed. His mother testified that he reached Nashville several days before Thanksgiving, instead of the night before, as testified to by him. His wife is careful to give no dates. It will be observed that, according to the admission of relator and his wife, they were in Detroit "in the neighborhood of the time" the crime was committed. As opposed to this testimony the affidavits of Louis Bernstein and Jewel Downs show that relator was in Detroit on December 1st. The latter states in her affidavit that she was the manager of an apartment hotel in Detroit, of which corporation Bernstein was an officer, and that on December 1, 1928, she embezzled $50 of her employer's money and gave it to

relator; that between September 24, 1928, and February 2, 1929, she embezzled $439 and gave it to relator, and that relator, knew that said moneys were embezzled. McMillan and Dixon testified that the relator, after his arrest, voluntarily admitted to them that he was in Detroit on December 2, 1928.

On the testimony thus detailed, we hold that the evidence is insufficient to justify the court in releasing the relator, and the judgment of the circuit court will be affirmed.

### On Petition to Rehear.

This is a proceeding by which the relator, in a *habeas corpus* proceeding, resisted being extradited to Detroit, Michigan, to answer a criminal charge, upon the ground that he was not in the demanding state when the crime is alleged to have been committed. The trial court dismissed his petition, and, upon appeal, we affirmed the judgment of the trial court, because the relator had not sustained the averments in his petition by satisfactory proof.

A petition has been presented to this court by relator asking permission to institute a second *habeas corpus* proceeding, upon the ground that he has discovered additional evidence to support his contention that he was not in the State of Michigan when the alleged crime was committed. The petition will be denied.

In *Anderson County* v. *Hays,* 99 Tenn., 567, this court said:

"Finally, we are asked to remand the cause in order that other facts and matters may be shown. This Court has the power, under the statute (Shannon, section 4905), to remand a case to the Court below when, in its opinion, complete justice cannot be had by reason of

some defect in the record, want of proper parties, or oversight without culpable negligence. But when a party has had full opportunity to present the facts necessary for his defense, and has failed to do so, and has chosen to rely upon presumptions and inferences, it does not present a case under the statute. If it did, there would be occasion for a remand in almost every case, as it is easy to see, upon the final trial, where the record might have been strengthened on the preliminary hearing.''

Such remandment must be based upon the record alone, and not upon matter outside of the record, such as affidavits, etc., for the remandment upon matter outside of the record would require the exercise of original and not appellate jurisdiction. *Bank* v. *Jefferson,* 92 Tenn., 542; *Hill* v. *Hillsman,* 75 Tenn., 197; *Puckett* v. *Richardson,* 74 Tenn., 64; *McEwen* v. *Gillespie,* 71 Tenn., 206; *McKinley* v. *Sherry,* 70 Tenn., 203; *Fogg* v. *Union Bank,* 63 Tenn., 541.

In *State ex rel.* v. *Hebert,* 127 Tenn., beginning on page 243, the court states the circumstances under which a second proceeding can be had in a *habeas corpus* case, and then says:

''Now in the case before the court it is perceived the petition in the *habeas corpus* proceeding before the judge of the criminal court of Davidson county does not charge any want of jurisdiction on the part of this court, or that the period of confinement has ended, or any other really new matter. At most, the petitioner therein seeks a new trial of the case by the use of the writ of *habeas corpus* on the ground of alleged newly-discovered facts. We have seen that the alleged new grounds charged are but variations of those already passed on by this court at Knoxville, and in substance the same; the new cir-

cumstances being introduced for the purpose of strengthening petitioner's case on the old points.''

The court further held that where new facts arise or are discovered after its decision which, if known, would have deterred it from dismissing the petition, upon the filing of a new verified petition, setting forth the new facts, the court may authorize a second *habeas corpus* proceeding.

The new petition herein contains no new facts, but simply asks for another trial to strengthen the facts or points alleged in the original petition, which it was expressly held in the Hebert case could not be done. Counsel fails to make the proper distinction between evidence and facts. The petition alleges the discovery of new evidence, but sets forth no new facts.

The petition will be dismissed.