STATE *ex rel.* BROWN *v.* GROSCH.

(*Nashville*, December Term, 1940.)

Opinion filed June 14, 1941.

620

H. B. WEIMER and ANDREW D. TANNER, both of Nashville, for plaintiff in error.

NAT TIPTON, Assistant Attorney-General, for defendant in error.

MR. SPECIAL JUSTICE ALAN M. PREWITT delivered the opinion of the Court.

This is an appeal from a judgment by Honorable Charles Gilbert, Judge of the Criminal Court of Davidson County, dismissing a petition filed to prevent extradition of the relator W. E. Brown to the State of Louisiana.

Some months ago relator Brown was arrested in the State of Michigan, charged with a crime against the laws of Tennessee, and was duly returned to this State. On February 3, 1941, he was indicted by the grand jury of Davidson County for robbery.

On or about February 11, 1941, the State of Louisiana, through its governor, made demand upon the governor of Tennessee to surrender relator to Louisiana to answer an indictment for murder. The governor of Tennessee honored such demand and duly issued his warrant authorizing the return of relator to Louisiana, and when this warrant was in the process of execution relator filed

his petition for *habeas corpus* to test the validity of the action of the governor.

Upon the hearing it appeared that the crime for which relator stood charged in Louisiana occurred about 9 P. M. on January 24, 1941, and the relator testified that he left New Orleans on that same day at 12 o'clock noon. The trial court dismissed the petition and relator duly appealed to this court.

Three questions are presented for consideration: (1) That relator was not in Louisiana at the time of the alleged commission of the offense; (2) That the governor of this State issued his warrant without a hearing and without any evidence of the commission of the crime in Louisiana on the part of Brown except the requisition warrant; (3) That since Brown was under an indictment in this State, the governor had no power to award his custody to the State of Louisiana.

As to the first question, relator testified he was not in Louisiana at 9 P. M. on the date the killing took place, but left the State at 12 o'clock noon before it was committed. This court said in *State ex rel. Van Scoyoc* v. *State*, 171 Tenn., 357, 360, 103 S. W. (2d), 26, 27:

"The issuance of the warrant of extradition by the chief executive of this State creates a *prima facie* case that the petitioner was lawfully charged with a crime in the demanding State and that he was a fugitive from justice thereof. *Illinois ex rel. McNichols* v. *Pease*, 207 U. S., 100, 28 S. Ct., 58, 52 L. Ed., 121."

We have further held that in order to warrant his discharge from custody, the proof must clearly and satisfactorily show that the prisoner is not a fugitive from justice. *State ex rel.* v. *Foster*, 160 Tenn., 285, 23 S. W. (2d), 660, 24 S. W. (2d), 897.

It is not necessary that the evidence show abso-

lutely that the party charged with the crime be present in the demanding State at the exact moment at which the crime is shown to have been committed. It is sufficient that the evidence show that such party was in the demanding State on or about the time alleged. *Strassheim* v. *Daily*, 221 U. S., 280, 31 S. Ct., 558, 55 L. Ed., 735; *Hogan* v. *O'Neill*, 255 U. S., 52, 41 S. Ct., 222, 65 L. Ed., 497; *Ex parte Germain,* 258 Mass., 289, 155 N. E., 12, 51 A. L. R., 789.

In *Ex parte Germain, supra,* proof that the party charged with the crime was in the demanding State at a date four days from that alleged as that of the crime was held sufficient to warrant his extradition as a fugitive from justice.

■ In the present case, the issuance by the governor of this State of the warrant made a *prima facie* case of the presence of the relator in the State of Louisiana at the time alleged in the indictment. Nothing appears in the record to overthrow this *prima facie* case except the unsupported testimony of the relator to the effect that he left the City of New Orleans, where the crime was alleged to have been committed, approximately nine hours prior to the time fixed as that of the commission of the crime.

With this presumption existent, the relator has not shown by clear and satisfactory proof that he was not a fugitive from justice.

■ It is well settled that in order to defeat extradition proceedings upon the ground that the party charged is not a fugitive from justice, his absence at or about the time of the crime must be shown beyond a reasonable doubt. *South Carolina* v. *Bailey,* 289 U. S., 412, 53 S. Ct., 667, 77 L. Ed., 1292.

■ The next contention is that relator was not ac-

corded a hearing before the governor of this State before the issuance of the warrant, and that the chief executive had before him no evidence of the commission of a crime in the demanding State by the relator other than that contained in the request for requisition received from the governor of Louisiana.

It is well settled under the authorities that the failure to accord a hearing does not affect the validity of the warrant, and that the person demanded has no right to a hearing upon the question as to whether or not he be a fugitive from justice.

In *Roberts* v. *Reilly*, 116 U. S., 80, 6 S. Ct., 291, 299, 29 L. Ed., 544, it is said:

"It must appear, therefore, to the governor of the State to whom such a demand is presented, before he can lawfully comply with it—first, that the person demanded is substantially charged with a crime against the laws of the State from whose justice he is alleged to have fled, by an indictment or an affidavit, certified as authentic by the governor of the State making the demand; and, second, that the person demanded is a fugitive from justice of the State the executive authority of which makes the demand. The first of these prerequisites is a question of law, and is always open, upon the face of the papers, to judicial inquiry, on an application for a discharge under a writ of *habeas corpus*. The second is a question of fact, which the governor of the State upon whom the demand is made must decide, upon such evidence as he may deem satisfactory. How far his decision may be reviewed judicially in proceedings in *habeas corpus,* or whether it is not conclusive, are questions not settled by harmonious judicial decisions, nor by any authoritative judgment of this court. It is conceded that the determination of the fact by the execu-

tive of the State in issuing his warrant of arrest, upon a demand made on that ground, whether the writ contains a recital of an express finding to that effect or not, must be regarded as sufficient to justify the removal until the presumption in its favor is overthrown by contrary proof.''

In *Munsey* v. *Clough*, 196 U. S., 364, 25 S. Ct., 282, 283, 49 L. Ed., 515, it was said:

''The proceedings in matters of this kind before the governor are summary in their nature. The questions before the governor, under the section of the Revised Statutes [18 U. S. C. A., sec. 662], are whether the person demanded has been substantially charged with a crime, and whether he is a fugitive from justice. The first is a question of law and the latter is a question of fact, which the governor, upon whom the demand is made, must decide upon such evidence as is satisfactory to him. Strict common-law evidence is not necessary. The statute does not provide for the particular kind of evidence to be produced before him, nor how it shall be authenticated, but it must at least be evidence which is satisfactory to the mind of the governor. . . . The person demanded has no constitutional right to be heard before the governor on either question, and the statute provides for none. To hold otherwise would, in many cases, render the constitutional provision, as well as the statute passed to carry it out, wholly useless.

''The governor, therefore, committed no error in refusing a hearing. The issuing of the warrant by him, with or without a recital therein that the person demanded is a fugitive from justice, must be regarded as sufficient to justify the removal, until the presumption in favor of the legality and regularity of the warrant is overthrown by contrary proof in a legal proceeding to

review the action of the governor. *Roberts* v. *Reilly, supra."*

So then we see that when the requisite papers arrive from the demanding State to the asylum State, the question first presented to the governor of the asylum State is whether the papers are regular and show a *prima facie* case against the prisoner. This is a legal question. The next question is whether the person sought is a fugitive from justice. This is a fact question, and whether these papers present a case justifying the issuance of the rendition warrant, is a matter in which the governor of the asylum State must use his personal discretion, which cannot be delegated. He may have a hearing or not, as he sees proper. If the governor of the asylum State issues the warrant for the person sought, the latter may test the legality of same in a *habeas corpus* proceedings, and also in such proceedings may raise the question of fact, but before his release is justified, as pointed out above, he must show beyond a reasonable doubt that he is not guilty. See *State* v. *Hackett,* 161 Tenn., 602, 33 S. W. (2d), 422; *State* v. *Selman,* 157 Tenn., 641, 12 S. W. (2d), 368; *State ex rel. Van Scoyoc* v. *State,* 171 Tenn., 357, 103 S. W. (2d) 26.

The third and last question is the most serious of the three raised in this record wherein it is urged on behalf of the relator that since he stands charged with the offense of robbery committed in this State the governor of this State had no right to surrender him to the Louisiana authorities until he had first atoned for the alleged crime here.

The defendant in error concedes that where one be demanded for extradition to another State, who stands charged with a crime against the asylum State, the asylum State before honoring such demand may first

require the party charged to atone for the crime committed by him against the laws of the asylum State. *Re Johnson,* 167 U. S., 120, 17 S. Ct., 735, 42 L. Ed., 103; *Taylor* v. *Taintor,* 16 Wall., 366, 21 L. Ed., 287.

The only cases cited by the relator which hold that where one is charged with crime in the asylum State the governor has no right to issue a warrant are *Ex parte Hobbs,* 32 Tex. Cr. R., 312, 22 S. W., 1035, 40 Am. St. Rep., 782; *Ex parte McDaniel,* 76 Tex. Cr. R., 184, 173 S. W., 1018, Ann. Cas., 1917B, 335. The case of *Re Opinion of Justices,* 201 Mass., 609, 89 N. E., 174, 24 L. R. A. (N. S.), 799, holds that the asylum State may waive its prior claim, but that the governor alone may not do so.

The overwhelming weight of authority is to the contrary. *State* v. *Allen,* 21 Tenn. (2 Humph.), 258, 259; *Roberts* v. *Reilly,* 116 U. S., 80, 6 S. Ct., 291, 29 L. Ed., 544; *People* v. *Hagan,* 34 Misc. 85, 69 N. Y. S., 475; *State* v. *Saunders,* 288 Mo. 640, 232 S. W., 973; *In re Hess,* 5 Kan. App., 763, 48 P. 596; *Hackney* v. *Walsh,* 107 Ind. 253, 8 N. E., 141, 57 Am. Rep., 101; *People* v. *Klinger,* 319 Ill., 275, 149 N. E., 799, 42 A. L. R., 581.

In *State* v. *Allen, supra,* in passing upon the direct question, this court said:

"By the constitution and laws of the United States, the Governor of Alabama had the right to demand Allen, and the Governor of the State of Tennessee had the power to give him up. Indeed it would have been his imperative duty to have done so, had he not rendered himself, by the commission of crime, amenable to our criminal laws. This would have justified the Governor of Tennessee in detaining him till he had made satisfaction therefor; but he chose not to do so, but to surrender him. This we think he might legally do, and that the act was not one of supererogation."

In *People* v. *Hagan, supra,* it is said [34 Misc. 85, 69 N. Y. S., 478]:

"Practically, therefore, it rests with the executive power of the state to determine whether a person who has committed crimes both in this State and in another should be held here to answer before he is extradited, or be extradited without considering the charge against him here, and in determining that question the offender has no voice, and will not be heard."

We quote the following from *State* v. *Saunders, supra* [288 Mo. 640, 232 S. W. 975]:

"After a somewhat exhaustive review of the literature on this subject, we find that, while the question has not been directly ruled upon in but few cases, illuminating dicta are to be found in a number of others. This much has been definitely settled, that where a demand is properly made by the Governor of one State upon the Governor of another, for the surrender of a fugitive, the duty so to do is not absolute and unqualified, but depends upon the circumstances of each particular case. If the law of the State in which asylum has been sought has been violated by the fugitive, and he has been convicted there, and is undergoing sentence, the demands of the law thus violated may be first satisfied before obedience to the constitutional provision to surrender him arises. *Taylor* v. *Taintor,* 16 Wall. 366, 21 L. Ed., 287, 4 Am. Rep., 58; . . . *Roberts* v. *Reilly,* 116 U. S., 80, 6 S. Ct., 291, 29 L. Ed., 544; . . . *Kelly* v. *Mangum,* 145 Ga. 57, 88 S. E., 556; *Hackney* v. *Welsh,* 107 Ind. 253, 8 N. E., 141, 57 Am. Rep., 101; . . . *State* v. *Allen,* 21 Tenn. (2 Humph.), 258, 259.

"Despite the rule announced in these cases as to the prior right of the asylum State to enforce its judgment before surrendering the fugitive, may it nevertheless

waive this right and deliver him to the authorities of the other State?

"*In re Opinion of Justices, supra,* which was an advisory opinion given by the justices of the Supreme Court of Massachusetts to the Governor of that State, it was held that, while the State in which a fugitive is found may waive its right to punish him for a violation of its own laws, and deliver him to the authorities of another State, this right cannot be exercised by the Governor alone; that he has no power to interfere with a judicial sentence except by pardon, and that a waiver of punishment does not constitute a pardon. A different conclusion is reached in *People ex rel. Gallagher* v. *Hagan, supra,* in which it is held that it is no defense to a warrant of execution that a prisoner who has been convicted of crime in a State cannot be extradited until he has served his sentence; that the Governor may waive the right of the State to punish him, and grant the requisition. In the discussion of this question, the court says:

" 'In the very nature of things it is desirable that this power should rest somewhere in the State to refuse to give up a prisoner until he has satisfied the claims of the State against him, or to waive the enforcement of those claims, and surrender him to another State for the satisfaction of its laws. If such power did not exist, a criminal might easily evade or postpone his just punishment for the gravest of crimes committed in one State by the commission of a crime of much less magnitude in another.' "

In *People* v. *Klinger, supra,* the Supreme Court of Illinois used the following language [319 Ill. 275, 149 N., E., 801, 42 A. L. R., 581]:

"The right of the Governor of one State to make a requisition on the Governor of another State for the de-

livery of a fugitive from justice, and the right of the latter Governor to grant or refuse it, are conferred by act of Congress on the ground of comity between states. If at the time such requisition is made the fugitive is in the custody of the courts of the asylum State under a charge of offense against its laws, the Governor thereof is not required to surrender such fugitive until after the judgment of the court of that State is satisfied. The executive of the asylum State may, however, relinquish the prisoner by waiving jurisdiction, even though such fugitive is under the jurisdiction of the courts of such asylum State. *Roberts* v. *Reilly,* 116 U. S., 80, 6 S. Ct., 291, 29 L. Ed., 544; *Hart* v. *Mangum,* 146 Ga. 497, 91 S. E., 543. The right of the Governor of the asylum State to decline to honor a demand for extradition is a right of the State and is in nowise based on the personal right of the fugitive, and, where no objection is made by the court or authorities who have jurisdiction over the fugitive, he has no right to object to the exercise of jurisdiction over him by the court of another State. When the requisition has been honored and the fugitive surrendered thereunder, such surrender will operate as a waiver of jurisdiction of the asylum State. *United States* v. *Marrin* (D. C.), 227 F. [314], 319; *Cozart* v. *Wolf,* 185 Ind. 505, 112 N. E. 241.''

▮ The decided weight of authority is that the determination as to whether or not the person charged with crime here as well as in another State shall be tried here therefor or sent to such sister State for trial rests with the executive branch of the government and not with the judicial branch, and that the action of the Governor in waiving the jurisdiction of this State is binding upon the courts and may not be reviewed here.

Since the decision of this court in *State* v. *Allen, supra,* there has been enacted a statute in this State, having its

origin in the Code of 1858, and carried into our official Code of 1932 in Section 11925, which provides as follows:

"Whenever a demand is made upon the Governor of this State by the executive of any other State or territory, in any case authorized by the constitution and laws of the United States, for the delivery of any person charged in such State or territory with any crime, if such person is not held in custody or under bail to answer for any offense against the laws of the United States, or of this State, he shall issue a warrant for the apprehension of such person."

The insistence here of the plaintiff in error is that this section should be held to be mandatory rather than directory.

Article IV, section 2, of the Constitution of the United States, declares:

"A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up to be removed to the State having Jurisdiction of the Crime."

By Sections 5278, 5279, United States Revised Statutes, United States Criminal Code, Sections 662, 663, 18 U. S. C. A., Congress gave effect to the foregoing provision of the Constitution by enacting that:

"Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate

of the State or Territory from whence the person so charged has fled, it shall be the duty of the executive authority of the State or Territory to which such person has fled to cause him to be arrested and secured, and to cause notice of the arrest to be given to the executive authority making such demand.''

The right to extradite persons charged with crime from one State to another does not have as its basis State statutes, but on the contrary finds support in the Federal Constitution and also in the above-mentioned congressional enactment, and, in our opinion, the State by legislation has no power to limit the right of the chief executive to grant warrants of extradition. In construing this statute we should adopt a construction which should not bring the statute in conflict with the Federal Statutes, for such conflict would result in the striking down of the State Statutes, since the Federal Statute is enacted pursuant to the Constitution of the United States and therefore constitutes the supreme law of the land. If two constructions of the statute be permissible, the court will adopt that construction which avoids constitutional conflict.

The duty or right conferred upon the chief executive of an asylum State has been described by the Supreme Court of the United States as being a duty approaching a positive command, but one which is to a large extent discretionary with such chief executive by virtue of the fact that no means have been set up in the statutes by which he may be required to comply with the request for extradition duly issued by a sister State. *Kentucky* v. *Dennison*, 24 How., 66, 16 L. Ed., 717.

In 22 Am. Jur., 249, it is said:

''Extradition proceedings, being based upon an act of Congress and the federal constitution, all State courts

are required to follow and are bound by the decisions of the Federal Supreme Court relative to such matters. The fugitive is not, however, sought for any crime committed against the United States, and the United States is not regarded as a party to interstate extradition proceedings; the federal government simply prescribes the process therefor. Since the duty of a state to surrender a fugitive from justice on a legal requisition from another state is definitely fixed by the United States Constitution, the state can ask no questions on the subject, nor can it impose any terms. Moreover, the Governor of a State in issuing a warrant in extradition acts under the authority of the constitution and laws of the United States, even though the state has legislated on the same subject; and he cannot issue a warrant on the ground of public policy.''

In point is the case of *People ex rel. v. Murray,* 357 Ill. 326, 192 N. E., 198, 94 A. L. R., 1487. In that case Illinois had a statute purporting to regulate extradition and by the terms of such statute the motive with which extradition was sought might be inquired into. The decisions of the Supreme Court of the United States were expressly to the effect that in interstate extradition the motive of the demanding State in seeking such extradition might not be inquired into. In that case it was sought to inquire the motive of the demanding State and the Supreme Court of Illinois held that so much of the statute as sought to permit an inquiry into the motive of the demanding State in requesting extradition was in conflict with the Federal Statute as construed by the Supreme Court of the United States, the final arbiter of such questions.

No doubt, the Legislature in enacting this statute was merely seeking to protect the right of Tennessee to retain offenders in cases where it was deemed advisable

to require them to first answer charges against them in this State without interfering with the discretion of the chief executive to surrender them, in appropriate cases, to the demanding State.

It therefore results that we find no error in the judgment of the criminal court of Davidson County in dismissing relator's petition for the writ of *habeas corpus*, and the action of said court is affirmed.