**STATE ex rel. Robert WILEY, Appellant,**

**v.**

**Bernard WAGGONER, Sheriff, Appellee.**

Supreme Court of Tennessee.

Nov. 19, 1973.

Edward M. Ellis, Knoxville, for appellant.

David M. Pack, Atty. Gen., Alex B. Shipley, Jr., Asst. Atty. Gen., Nashville, for appellee.

## OPINION

FONES, Justice.

Robert Wiley, petitioner herein, filed a petition for writ of habeas corpus in the Knox County Criminal Court against Bernard Waggoner, Sheriff of Knox County, respondent herein. The petition was overruled by the trial court. Petitioner prayed for and was granted an appeal to the Court of Criminal Appeals. The case was transferred to this Court because the single issue presented is a challenge to the constitutionality of a Section of the Uniform Criminal Extradition Act, T.C.A. § 40-1016. The matter has been submitted on the briefs of petitioner and the Attorney General of Tennessee, on behalf of respondent.

The undisputed material facts of this case are that petitioner was indicted on April 26, 1972 by the Grand Jury of Ochiltree County, Texas, for the crime of swindling. On December 7, 1972, petitioner was arrested in Tennessee on a Governor's warrant of extradition issued pursuant to the Uniform Criminal Extradition Act, T.C.A. § 40-1001 et seq. We are entitled to and do presume that the warrant was issued upon a requisition for petitioner by the executive authority of Texas to the Governor of Tennessee. (The requisition document itself is not identified and authenticated, and we can take no cognizance of its existence in this record). On December 20, 1972, petitioner filed his petition for writ of habeas corpus, contending inter alia, that the Governor's warrant was illegally issued. The Criminal Court of Knox County considered the matters raised by the petition in a hearing at which the petitioner testified, on February 9, 1973. At the close of the hearing, said court overruled the petition, from which action this appeal was taken.

Petitioner presents the following assignment of error:

"The Trial Court erred in the holding that the Legislature could authorize the Governor to issue a Warrant of Arrest under the Extradition Law."

Under this assignment petitioner contends that T.C.A. § 40-1016 of the Uniform Criminal Extradition Act is unconstitutional. This Section reads as follows:

"If the governor shall decide that the demand should be complied with, he shall sign a warrant of arrest, which shall be sealed with the state seal, and be directed to a sheriff, marshal, coroner, or other person whom he may think fit to entrust with the execution thereof; and the warrant must substantially recite the facts necessary to the validity of its issue."

Petitioner's position is that under the provisions of the Tennessee Constitution, Article II, Sections 1, 2, relating to the separation of powers between the Executive, Judicial and Legislative Departments, the Legislature cannot grant to the Governor a judicial function, to wit, the issuance of an arrest warrant.

Article IV, Section 2(2) of the United States Constitution, provides as follows:

"A person charged in any state with treason, felony, or other crime, who shall flee from justice, and be found in another state, shall on demand of the executive authority of the state from which he fled, be delivered up, to be removed to the state having jurisdiction of the crime."

In 1793 the United States Congress implemented this Section of the Constitution by passing an Act, the substance of which has been retained and codified in language similar to the original enactment, at 18 U.S.C.A. § 3182:

"Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. . . ."

In the past, Tennessee had in effect statutes originating in the Code of 1858, which provided that upon demand of the Governor of another State for the delivery of a person charged with a crime in such State, the Governor of Tennessee should issue a warrant of arrest for such person. By the Public Acts of 1951, Chapter 240, Tennessee became the thirty-fifth State to adopt the Uniform Criminal Extradition Act. The Act, which had been codified as T.C.A. § 40–1001 et seq., has been adopted in at least 44 states and 2 territories. The Act details the procedure by which the Governor is to cause a fugitive to be arrested. Section 40–1016 of the Act follows generally the provisions found in the federal law and in the prior Tennessee law providing for the issuance of an arrest warrant by the Governor.

■■ However, in passing on the constitutionality of Section 40–1016, we must keep in mind that the matter of extradition does not rest upon State statutes, but, on the contrary, originates with the Federal Constitution, supra, which is implemented by the Congressional enactment, supra. State ex rel. Brown v. Grosch, 177 Tenn. 619, 633, 152 S.W.2d 239 (1941). State legislation on the subject is valid only insofar as it is ancillary to and in aid of the Federal requirements. See 4 Wharton's Criminal Law and Procedure, Extradition, § 1637, p. 320; 31 Am.Jur.2d, Extradition, § 5, p. 927. The decisions of the Supreme Court of the United States are binding upon us in extradition matters. State v. Cate, 199 Tenn. 195, 285 S.W.2d 343 (1955), and So. Carolina v. Bailey, 289 U.S. 412, 53 S.Ct. 667, 77 L.Ed. 1292 (1933).

The United States Supreme Court, in the case of Ex parte Kentucky v. Dennison, 65 U.S. (24 How.) 66, 16 L.Ed. 717, 727–8 (1861), addressed itself to the question of "whose duty it is to have the fugitive delivered and removed to the State having jurisdiction of the crime," in these words:

"The clause in question [U.S.Const., Art. IV, § 2(2)] like the clause in the Confederation, authorizes the demand to be made by the executive authority of the State where the crime was committed, but does not in so many words specify the officer of the State upon whom the demand is to be made, and whose duty it is to have the fugitive delivered and removed to the State having jurisdiction of the crime. But, under the Confederation, it is plain that the demand was to be made on the Governor or executive authority of the State, and could be made on no other department or officer; for the Confederation was only a league of separate sovereignties, in which each State, within its own limits, held and exercised all the powers of sovereignty; and the Confederation had no officer, either executive, judicial or ministerial, through whom it could exercise an au-

thority within the limits of a State. In the present Constitution, however, these powers, to a limited extent, have been conferred on the General Government within the territories of the several States. But the part of the clause in relation to the mode of demanding and surrendering the fugitive is (with the exception of an unimportant word or two), a literal copy of the Article of the Confederation, and it is plain that the mode of the demand and the official authority by and to whom it was addressed, under the Confederation, must have been in the minds of the members of the convention when this article was introduced, and that, in adopting the same words, they manifestly intended to sanction the mode of proceeding practiced under the Confederation—that is, of demanding the fugitive from the executive authority, and making it his duty to cause him to be delivered up."

In the case of Illinois ex rel. McNichols v. Pease, 207 U.S. 100, 28 S.Ct. 38, 52 L. Ed. 121, 125 (1907), the United States Supreme Court restated the principles of law deduced from numerous decisions of that Court construing the Federal constitutional and statutory provisions relating to extradition. These principles, as enunciated by the Court in *Pease* expressly make it the duty of the Executive of the State where the fugitive is found to cause him to be arrested, surrendered and delivered to the appointed agent of the demanding State, to be taken to that State.

This Court, in State ex rel. Redwine v. Selman, 157 Tenn. 641, 12 S.W.2d 368 (1928), addressed itself to the matter of the Governor's power to issue an arrest warrant, as follows:

"(3) The Governor of Tennessee alone was clothed with power to determine whether or not the fugitive should be rendered upon demand of the Governor of the State of Georgia, and to issue the warrant and render the fugitive if the statutory prerequisites appeared. The

execution of that power, whether ministerial as held in some jurisdictions, or *quasi*-judicial as held in others, required an examination of the requisition and a determination of the two questions of law and fact above referred to. Their determination required the exercise of a discretion personal to the Governor and it could not be delegated to another in his absence from the State. Ex parte Pelinski, Mo., 213 S.W. 809."

We note that the "two questions of law and fact" mentioned in the *Selman* case refer to the criteria in effect at the time *Selman* was decided to be used by the Governor in passing upon a request for a fugitive. These questions were: (1) is the person demanded substantially charged with a crime in the demanding state, and (2) is the person a fugitive from said state. At the present time, T.C.A. § 40–1012 sets out several factors to be considered by the Governor before the warrant is issued. These factors are not inconsistent with the questions for the Governor set forth in *Selman*.

As stated heretofore, extradition is primarily a Federal matter. From our review of the Federal authorities it is clear that the power of the Governor to issue an arrest warrant, pursuant to an extradition proceeding, is a well-settled fundamental principle reaching far back into the constitutional history of this country, and even beyond. See *Dennison*, supra.

The Constitution of the United States implies, and the Federal Statute implementing it expressly vests, authority to grant warrants of extradition in the Chief Executive of an asylum state. This Court observed in *Grosch*, supra, that the Legislature has no power to limit the right of the Chief Executive to grant warrants of extradition, for the reason that to do so would be in conflict with the supreme law of the land. By the same token, the Legislature has no authority to designate anyone other than the Governor to exercise that power.

Petitioner calls our attention to the cases of Pettibone v. Nichols, 203 U.S. 192, 27 S.Ct. 111, 51 L.Ed. 148 (1906) and Moyer v. Nichols, 203 U.S. 221, 27 S.Ct. 121, 51 L.Ed. 160 (1906). Petitioner urges that these cases say the issuance of a Governor's warrant of arrest is a judicial or quasi-judicial function. In setting out the facts of the case, the Court, in *Pettibone,* observed that the Supreme Court of Idaho held the action of the Governor of Colorado, in honoring a requisition, to be "at least quasi judicial". No further mention was made in *Pettibone* of the nature of the Governor's function in issuing a warrant, as this was not at issue. The *Moyer* decision, cited by petitioner, is a companion case to *Pettibone,* governed by *Pettibone,* and contributes little or nothing to our consideration of the matter at hand.

However, the *Pettibone* case and this Court's decision in *Selman,* supra, illustrate one point; namely, that Courts have referred to the Governor's function in issuing an arrest warrant in different ways. This is strictly a matter of terminology, since no court we know of has ruled that the issuance of a warrant of extradition and arrest is a judicial function to be exercised by the judiciary and not the executive.

In our opinion, the Governor's function should be described as executive in nature. Ex parte Germain, 258 Mass. 289, 155 N.E. 12, 51 A.L.R. 789 (1927); 35 C.J.S. Extradition § 2, p. 381–382. We feel that the term "executive function" particularly applies in view of the nature of extradition proceedings. These proceedings have been described as summary, rather than judicial to inquire into the merits of the charge. C.J.S., supra. The object of extradition is to prevent the successful escape of persons accused of crime, whether convicted or unconvicted, and to secure their return for the purpose of trial or punishment in the demanding state. An extradition is simply one step in securing the arrest and detention of the defendant. See 4 Wharton's Criminal Law and Procedure, Extradition, Sec. 1632, p. 311.

On the basis of the foregoing, we are of the opinion that T.C.A. § 40–1016 does not violate the separation of powers between the judiciary and the executive, and is a valid and constitutional enactment.

It results that the judgment of the trial court is affirmed. Costs will be assessed against the petitioner.

DYER, C. J., McCANLESS, J., and JENKINS and LEECH, Special Justices, concur.