CONLEE et ux. v. MERCHANTS' & PLANTERS' LUMBER CO. (No. 6744.)†

(Court of Civil Appeals of Texas. Galveston. Dec. 22, 1914. Rehearing Denied Jan. 14, 1915.)

MECHANICS' LIENS ☞73—BUILDING MATERIALS—HOMESTEAD.

Where defendants purchased certain farm property which was unimproved, with the intention of making it their home, and so notified complainant before purchasing materials for the construction of the house on the property, it was exempt as homestead, and complainant could not therefore fix a materialman's lien on the property for materials so sold for the building under a contract not in writing, and signed and acknowledged by the wife in the same manner as required to convey a homestead or her separate estate.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 87, 88, 90–102; Dec. Dig. ☞73.]

Appeal from District Court, Matagorda County; Samuel J. Styles, Judge.

Suit by the Merchants' & Planters' Lumber Company against J. A. Conlee and wife on an open account for building materials and to foreclose a mechanic's lien. Judgment for plaintiff, and defendants appeal. Reversed and rendered in part and affirmed in part.

W. C. Carpenter, of Bay City, for appellants. Gordon Lawson, of Palacios, for appellee.

McMEANS, J. This suit was brought by the Merchants' & Planters' Lumber Company against J. A. Conlee and his wife, on an open account for $1,107.22 for lumber and other building material sold by it to defendants, under a verbal contract made between the parties in January, 1913, an itemized account of same being attached to plaintiff's petition. It was alleged in the petition that said lumber and other materials were furnished to defendants to enable them to build a house upon the east 15 acres of lot No. 19 of Gaines' subdivision of the Nixon league, in Matagorda county. The account shows dates of sales between January 21 and April 19, 1913, inclusive. It is further alleged in the petition that on June 11, 1913, plaintiff took all necessary steps to fix a materialman's lien on the house constructed by defendants with said lumber and other material, and upon the 15 acres of land upon which it was built. The petition closed with a prayer for judgment for the debt and foreclosure of the alleged lien.

The defendants answered denying the allegations of the petition, except the correctness of the account sued on, and specially pleaded as follows:

"These defendants admit that the material sold by plaintiff to defendant J. A. Conlee was used by him to erect a building upon said 15 acres of land, described in plaintiff's petition, and that the said 15 acres is owned by defendants; and in that connection these defendants aver that said land was purchased by them for the purpose of establishing their home upon the same, and that said lumber was purchased for the purpose of building a residence for defendant's family, they being husband and wife, and that plaintiff knew of such facts at the time it sold and delivered said material to defendant J. A. Conlee; that said land and house have ever since said time and now are being used by defendants as their home, and that they have had, and now have, no other home; and they say that plaintiff failed to avail itself of its statutory remedy of fixing a lien upon same by contracting with defendants in writing prior to the delivery of any such material and having the wife to sign and acknowledge the same in the manner required to convey the homestead, or her separate estate."

The case was tried by the court without a jury, and resulted in a judgment for plaintiff for the debt claimed and foreclosure of the materialman's lien upon the house and 15 acres of land, and ordering the same sold in satisfaction of the judgment, from which the defendants have appealed.

The only question presented for our decision is whether the court erred in foreclosing the alleged lien. This, of course depends upon whether the homestead right of defendants had attached to the land at the time the defendant J. A. Conlee contracted with the plaintiff for the purchase of the materials. To determine this we must look to the evidence, which is practically without conflict.

It was shown that prior to the purchase of the materials from plaintiff the defendants had bought the 15 acres in question from one H. C. Tatum, with the intention of establishing their home thereon. The contract for the building materials, which was verbal, was made by F. M. Dyer, plaintiff's general manager, and the defendant J. A. Conlee.

H. C. Tatum testified:

"I sold this land to the Conlees, and they told me when they bought it that they were buying it for a home, and they have made their home there since they bought it. Yes, sir; I introduced Mr. Conlee to Mr. Dyer, and I said to Mr. Dyer that Mr. Conlee has come

down and bought a piece of land from me, and they (the defendants) are going to make their home here, and Mr. Conlee will have to have a bill of lumber to build him a house. The defendants did afterwards build a house on the particular piece of land that I sold them, and have lived in it ever since as their home. As to what preparations were made before they put any lumber on the ground, I will state that we were down there several days before the blocks were hauled by my brother (C. A. Tatum) for the foundation of the house. The place was measured off and stakes stuck in the ground for the corners. And in regard to improvements, I will say that there was a little brush cleared off out of the way. They had ordered fruit trees and shrubbery to plant on that place before the lumber bill was purchased."

Defendant J. A. Conlee testified:

"We bought this land from Mr. Tatum for the purpose of making a home out of it, and when I bought it I did tell different people, in talking with them, what I intended to use it for. At the time I purchased this lumber from Mr. Dyer I did tell him for what purpose I wanted the lumber—that I wanted to build a house and home. I told him that I wanted to build a house and live in it; and I did build a house to live in out of the lumber that I purchased from him, and that house is my present home. I never signed any contract with the plaintiff, Merchants' & Planters' Lumber Company, in which my wife joined me. The only preparations made before buying the lumber towards fixing our home on this land was to clear off where we wanted to put the house and stake it out; that is, marking out where we wanted the house to sit, and the way we wished the house to face. We built the house right at the edge of the timber, and we had to clear away some small brush, but no heavy timber. We had cleared away this brush where we wanted the house to sit before we purchased the lumber."

Mrs. J. A. Conlee testified:

"We bought that land for the purpose of making a home there on it. When we bought this land from Mr. Tatum we told him at that time we wanted it for a home. After we bought this land we did begin to make preparations to make it our home. I think the next day after we bought it we ordered some shrubbery from the Austin Nursery Company, and completed our intention to make our home by building a house on it. We moved into that house about the latter part of February, 1913, and have been living there ever since."

F. M. Dyer testified that he sold the bill of lumber to defendants to build a house on the land, and that at that time they asked him to make close figures as it would be a cash deal. He further testified:

"Certainly they told me that they expected to build this house to live in, and were coming here to live, and expected to build the house to live in."

It was shown that at the time defendants bought the land it was not in cultivation, and was without improvements of any kind.

We think that the foregoing evidence is sufficient to show that the 15 acres of land, at the time the lumber and other materials were bought from plaintiff, constituted the homestead of the defendants, and that no lien as security for the payment thereof could be fixed, as was attempted to be done by plaintiff, by filing with the county clerk an itemized sworn account thereof, and the serving of written notice thereof upon defendants. The land was purchased by defendants with the intention of making it their home, which is a prime factor in securing the benefits of the exemption. This intention was manifested by acts of preparation to make it the home, by selecting the site for the residence, clearing the ground upon the place so selected and the ordering of fruit trees and shrubbery to plant thereon, and all this was done before the building materials were purchased. It was the declared intention of the defendants to make their home upon the land at the time they bought it and up to the time they purchased the building materials, and this was known to plaintiff at the time it sold the materials to them. The fact that the land was wholly without improvements at the time defendants bought it does not alter the case, for, as said by our Supreme Court, speaking through Judge Brown, in Cameron v. Gebhard, 85 Tex. 616, 22 S. W. 1035, 34 Am. St. Rep. 832:

"If a homestead cannot be acquired until it is occupied, then no one can acquire a homestead exempted from forced sale unless he buys an improved place; and then he must have a race with the sheriff for possession. The unimproved lands of the country and the vacant lots of our cities cannot be acquired for the purpose of making a home by the man who is indebted, except at the risk of turning it over to a creditor. If a man owes nothing, or is able to pay all that he owes, he does not need the exemption; if he has other property, he can protect his home by pointing out that other property for sale; but, if he has nothing but the homestead, he comes within the necessity of the constitutional provision, and to him is the chief value of exemption."

The facts of that case are so similar to the facts of this that we regard that decision as decisive of the questions under discussion.

Plaintiff cites and strongly relies upon the case of West End Town Co. v. Grigg, 93 Tex. 451, 56 S. W. 49, in support of the judgment. The facts of that case are substantially as follows: Grigg purchased two vacant and unimproved lots in the city of San Antonio for the purpose of a home for himself and wife. Desiring to erect for themselves a house on these lots to dwell in, they applied to the West End Town Company for a loan of money sufficient to erect the dwelling, and, after some negotiations between them, the West End Town Company agreed that, if Grigg and wife would transfer the property to it, it would have the dwelling erected upon the lots, and then reconvey the lots with the dwelling thereon to Grigg and wife for the cost of the building, and retain a vendor's lien upon the property to secure the payment to it of the cost of building the house. In pursuance of this agreement, Grigg and wife thereafter deeded the lots to the West End Town Company; Mrs. Grigg's separate acknowledgment being taken in the manner required by the statutes and Constitution for the conveyance of her separate property. At the time of the execution of this deed a contract was made with the consent

of the West End Town Company by Grigg with W. S. Hardy and others for the construction of the house at the stipulated price of $3,600, the money to be paid to Hardy by the West End Town Company for doing the work. At the same time, and as a part of the same transaction, the West End Town Company reconveyed the lots to Grigg and wife, the consideration being several notes upon which the suit was based, aggregating the contract price of the building and interest from its date to maturity, the deed and notes retaining the vendor's lien to secure the payment of the notes. Thereafter Hardy, the contractor, constructed the dwelling upon the lots, and the contract price was paid to him by the West End Town Company. The labor and material which went into the construction of the house were furnished upon the obligation of the town-site company to pay for the same, and not upon the credit of Grigg and wife. Under these facts the Supreme Court held that there was no homestead exemption in favor of Grigg and wife at the time the contract was made; that the purpose of Grigg and wife to establish their homestead upon the lots at some future time, if able to erect a residence upon it, did not make it a homestead, but the making of the contract for the construction, concurring with the intent to occupy it, fixed the homestead right from that time; that the agreement between Grigg and the builder for the erection of the house, together with the execution of the notes by Grigg and wife to the town-site company for the price of the work formed a contract for the improvement, and the conveyance of the lots by Grigg and wife to the town-site company, and the reconveyance to them, constituted a mortgage to secure the notes; that, the instruments all being executed at the same time, when the contract for the building became binding the lien of the mortgage to secure the notes became effective and attached to the lots; that, no homestead exemption having existed prior to the last act by which the transaction was completed, but the intention to occupy continuing with Grigg and wife, the constitutional immunity from debts then arose in future transactions, but did not invalidate the lien which had attached to the lots.

The difference in the facts of that case and of this are quite apparent. Here we have the intention to appropriate the land as a homestead, coupled with acts of preparation which manifested that intention. The material of which the dwelling was constructed was purchased upon Conlee's obligation to pay for it, for it is clear from Dyer's testimony that he sold the material upon the representation of Conlee that it was a cash transaction. When Conlee and wife bought the land with the intention of establishing their home thereon, and, following the purchase, cleared the land upon which they intended the house to stand, ordered fruit trees and shrubbery for planting, and then, in furtherance of their intention, bought the building material to construct their dwelling upon the representation that this should be a cash transaction, and afterwards built and occupied the house as their home, before any steps were taken by the plaintiff to fix a lien upon it, everything essential to complete their homestead upon the land was performed and the exemption completed, and the house and land were no longer subject to forced sale for the payment of plaintiff's debt for the material.

Entertaining these views, we are of the opinion that that part of the judgment of the court below foreclosing the materialman's lien upon the land and improvements is erroneous, and said judgment is here reversed, and judgment rendered for the defendants. The part of the judgment in favor of the plaintiff for the value of the materials sold to defendant is undisturbed.

Reversed and rendered in part and affirmed in part.