**SKILES v. SHROPSHIRE et al. ***
No. 12657.

Court of Civil Appeals of Texas. Fort Worth.

April 2, 1932.

Rehearing Denied May 7, 1932.

---

*Writ of error granted.

Massingill & Belew, of Fort Worth, for appellant.

Simpson, Brewster & Rogers and Bryan, Stone, Wade & Agerton, all of Fort Worth, for appellees.

CONNER, C. J.

This suit was instituted by F. W. Skiles against Walter Shropshire and his wife, Callie Shropshire, and the Continental National Bank of Fort Worth and the Fort Worth National Bank. Plaintiff sought to recover from Shropshire and wife the amount of principal and interest and attorney's fees due on two notes aggregating $1,000. Each note bore interest from its date until maturity at the rate of 8 per cent. per annum, and after maturity at the rate of 10 per cent. per annum, and contained the usual accelerating maturity clause and the provision for attorney's fees. It was alleged that each note was secured by a deed of trust executed contemporaneously with the notes covering lot 3, block 2, of Q. Bone addition to the city of Fort Worth; that said notes and trust deeds had been duly executed and signed by the defendant Walter Shropshire and his wife, Callie Shropshire. Plaintiff further alleged the maturity of the notes, defendants' default in payment, and prayed for a foreclosure of the trust deed liens.

The Shropshires pleaded a general denial, that the name of Callie Shropshire had been forged to said trust deeds, and that said lot 3 at all times involved constituted their homestead.

The plaintiff Skiles in reply pleaded a general denial, and, in the alternative, for recovery against the banks, alleging that the notes had been executed in consideration of money loaned at the time to the Shropshires, the money so advanced being evidenced by checks made payable to Walter and Callie Shropshire; that Walter Shropshire presented said checks to the Fort Worth National Bank, which paid them to him in the presence of the woman who signed the trust deeds; that said bank returned the paid checks to the Continental National Bank, upon which they had been drawn, and that, if Callie Shropshire's signature had been forged, as alleged, the banks were liable.

The trial was before the court without a jury, and judgment was rendered against Walter Shropshire for the amounts due upon the notes, but denied a recovery against either bank and canceled the trust deeds as clouds upon the title of lot 3, which was adjudged to be the homestead of the Shropshires. From this judgment the plaintiff Skiles has duly prosecuted this appeal.

Briefly stated, the evidence shows that prior to February 2, 1929, Walter Shropshire and his wife, Callie Shropshire, owned and occupied a residence which constituted their homestead on South Main street in the city of Fort Worth. On that day Walter Shropshire applied for a loan of $600, and on the 23d day of the same month applied for a further loan of $400. These loans were granted and checks, made payable to Walter and Callie Shropshire, were delivered to Walter Shropshire. A woman was introduced to the plaintiff Skiles at the time as Callie Shropshire, and as security for the said loans she and Walter Shropshire executed and delivered the trust deeds declared upon, and at the same time signed a formal designation of their homestead as on the lot on South Main street. Callie Shropshire, the wife of Walter Shropshire, testified without contradiction that she and her husband had sold their homestead on South Main street for cash, with an agreement by the purchaser that they might remain there a reasonable length of time until they could establish a new home; that the purpose of the sale of their then homestead was to acquire a new home, and that with the proceeds of the sale they in fact purchased said lot 3 and built thereon a house, into which they moved within less than three months of the date of the sale of their old homestead, which was on December 6, 1928, by deed duly recorded; that she knew nothing whatever of the fact that her husband had secured the loan, and together with another woman had signed the trust deeds until after the plaintiff had visited the home on lot 3, seeking a collection of the interest on the notes then alleged to

have been unpaid. It seems undisputed that, at the time of the execution of the notes and trust deeds, Walter Shropshire introduced a woman then with him as his wife, Callie Shropshire, and Skiles accepted her as such without further inquiry. It also appears without dispute that this woman was not Walter Shropshire's wife. It further appears that Skiles, prior to the delivery of the checks to Walter Shropshire, visited the homestead on South Main street, but made no inquiry of Mrs. Shropshire, and also visited lot 3, upon which at the time the house had not been completed, and in good faith believed that the property was not a homestead.

Under the circumstances, we fail to see how we can legally disturb the trial court's conclusions that lot 3 was the homestead of Mrs. Callie Shropshire and as such exempt from the operation of the trust deeds declared upon.

In 29 Corpus Juris, pages 840 and 841, it is said:

"A reasonable time must be allowed for the debtor to make the change from the old homestead to the new one, and where there is no unreasonable delay it will be exempt during the time intervening between its acquisition and its actual occupancy.

"While the right of homestead will not attach to vacant land acquired by purchase independently of a change of homestead, it will attach to vacant land taken in exchange for a former homestead or bought with the proceeds of a former homestead when held in good faith for use as a homestead.

"In many jurisdictions the proceeds of a sale of the homestead may be reinvested in a new homestead, which thereupon becomes exempt as was the former. The purchase of the new homestead is regarded as merely the continuance of the old homestead and not the formation of a new one."

In First State Bank v. Allen (Tex. Civ. App.) 150 S. W. 747, where a judgment debtor sold his home and bought 80 acres of land which he intended should be his new home, it was held that the 80 acres were exempt as a homestead, notwithstanding the fact that he had not delivered the deed to his former property until after the filing of the abstract of judgment against him.

In Leland v. Chamberlain (Tex. Civ. App.) 60 S. W. 435, the owner of a homestead sold it and applied the proceeds of the sale in payment and in improvement of other land, and it was held that he could claim a part of such other land as exempt, which part was of no greater value than that sold as a homestead.

In Ellis v. Light (Tex. Civ. App.) 73 S. W. 551, a judgment creditor was held not to have acquired a lien on certain lands purchased by a judgment debtor with the proceeds of a sale of his homestead.

It is true, generally speaking, that the husband has the power to designate the homestead of the family, but it must be done in good faith, and we think it obvious in the case before us that the trust deeds and the notes given to appellant Skiles were executed in flagrant fraud of the wife. There is nothing in the record that is even suggestive of any bad faith on her part. Appellant admits, in effect, in his pleadings that appellee Callie Shropshire was ignorant of the entire transaction, and authorities in this state are uniform in their holding that the fraudulent acts of the husband in which the wife does not participate will not deprive her of her homestead rights. See First State Bank v. Allen (Tex. Civ. App.) 150 S. W. 747; Parker v. Schrimsher (Tex. Civ. App.) 172 S. W. 165; Thomas v. Williams, 50 Tex. 269; Armstrong v. Moore, 59 Tex. 648; Eckhardt v. Schlecht, 29 Tex. 129; Texas Land etc., Co. v. Cooper (Tex. Civ. App.) 67 S. W. 173, and authorities there cited.

It cannot be said, as a matter of law, that appellant was wholly free from a want of diligence to obtain knowledge of Callie Shropshire's homestead rights. The deed to the old homestead was of record, and Callie Shropshire was in actual occupancy of the old homestead when visited by appellant, but he made no inquiry of the occupant. The only basis for his belief that the woman who signed the name of Callie Shropshire to the notes and trust deeds was the wife of Walter Shropshire was the fact that she was introduced by the latter as his wife. We therefore conclude that the judgment of the trial court in favor of the homestead exemption must be upheld, and we are further of the opinion that no recovery can be had from the banks on appellant's alternative plea. Callie Shropshire, the wife, in no event had any authorized control of that fund. If any title thereto vested at all, it was in Walter Shropshire as community property of which he had the sole right of control under our statutes. Moreover, the checks were paid at the Fort Worth National Bank to the particular individuals they were made payable to without any character of notice that the name of Callie Shropshire had been forged thereto. See Townsend, Oldham & Co. v. Continental State Bank (Tex. Civ. App.) 178 S. W. 564, and authorities therein cited.

We think the judgment must be affirmed, but the writer ventures to suggest that, in view of the ruling that the deed of the husband to the community homestead without the joinder of the wife, as required by our statutes, is operative upon the husband's community interest after the homestead right of the wife terminates, our judgment should not be construed as precluding appellant's

right, if any he has, to establish, by sale under the trust deeds or otherwise, a right to Walter Shropshire's community interest in the exempted homestead, subject, of course, to the termination of all homestead rights. See Marler v. Handy, 88 Tex. 421, 31 S. W. 636; McDonald v. Simons (Tex. Com. App.) 280 S. W. 571; Fertitta v. Toler (Tex. Civ. App.) 43 S.W.(2d) 467.

Judgment affirmed.