**STEVENSON et al. v. WILSON.**

No. 1897.

Court of Civil Appeals of Texas. Eastland.

April 14, 1939.

Rehearing Denied June 23, 1939.

Davidson & McMahon, of Abilene, and Walter Carter, of Sweetwater, for appellants.

Anderson & Dickson, of Sweetwater, for appellee.

GRISSOM, Justice.

This suit was instituted by W. L. Wilson to enjoin the sale of Wilson's undivided 1/7th interest in 468 acres of land in Hill County, under an execution based on a judgment obtained by J. McAllister Stevenson against Wilson, it being contended the land constituted the homestead of Wilson and his wife. Plaintiff's interest in the land was devised to him by the will of his father, who died March 16, 1936. The judgment was obtained prior to that time. On September 7, 1937, Stevenson caused the execution to be issued and the Sheriff of Hill County to levy on said land on October 8, 1937.

At the close of the testimony the court overruled the defendants' motion for an instructed verdict and submitted the cause to the jury on the following special issues:

"No. 1. Do you find from a preponderance of the evidence that it has been the intention of W. L. Wilson at all times since his father's death to make his share of his father's estate his homestead? Answer 'Yes' or 'No.'

"No. 2. Do you find from a preponderance of the evidence that prior to October 8, 1937, W. L. Wilson made improvements on any of the land in question with his own funds for the purpose of using such as his home? Answer 'Yes' or 'No.'

The court gave the following definition: "By 'preponderance of the evidence' as used in this charge is meant the greater weight of the credible testimony."

The jury answered each of said special issues "Yes." The court entered judgment declaring the land in controversy the homestead of the plaintiff and enjoining Stevenson and the Sheriff from selling it, from which judgment the defendants have appealed.

Defendants, by their first proposition, assert that the testimony was insufficient, as a matter of law, to raise the homestead issue, and, therefore, the court erred in overruling defendants' motion for an instructed verdict. The evidence shows that Wilson was by the will of his father devised an undivided 1/7th interest in 468 acres of land, upon which Stevenson's writ of execution was levied, and that plaintiff and his brother are the executors of his father's estate. There was evidence to the effect that prior to his father's death Wilson had talked to his father with reference to making said land his homestead and had asserted his intention to do so; that thereafter Wilson had continuously intended to make said land his homestead, and had made statements to that effect to several persons who testified upon the trial of the case. Although the land had not been partitioned at the time of the trial there was a tentative agreement among the owners of said 468 acres of land that Wilson was, upon partition, to have a particular 60 acre tract. There was evidence that prior to the time the execution was levied on plaintiff's interest in the land he had made valuable improvements on the tract for the purpose of preparing it for use as his home; that prior to the levy, and prior to plaintiff's knowledge of any intention to attempt to sell said property in satisfaction of the judgment against him, plaintiff's wife and daughter moved into a part of a house on the 468 acre tract of land, which house was also occupied by a tenant; that Mrs. Wilson had a cow and chickens at the place where she occupied the room and that she had furniture and household goods moved there sufficient for the use of herself and daughter; that plaintiff had repaired the houses, barns and fences on the 468 acre tract of land at the expense of the estate; that he had built a new floor in the house on the 60 acre tract of land, where he testified he expected to make his home, which latter repairs were made at his own expense; and for the purpose of using it as his home; that while all but the 60 acre tract was rented to tenants on the customary "1/3 and 1/4", this particular 60 acres was being cultivated by a person employed by plaintiff to do the work for an agreed price; that plaintiff owned no other real estate; that prior to the levy of the execution, plaintiff had taken control and possession of the 60 acre tract claimed by him as a homestead, and plaintiff's wife and daughter had actually moved into a house onto the 468 acre tract; that the house which plaintiff intended to occupy had been leased to a tenant by plaintiff's father and that said lease did not expire until January 1, 1938; that at the time of this trial, on January 5, 1938, said tenant in the house on the 60 acre tract, had just moved, or was about to move, and had not

moved earlier because said tenant was not able sooner to obtain possession of other premises which he had rented; that plaintiff and his family intended to make the 60 acre tract their home as soon as the house was vacated by the tenant in possession under the rental contract from plaintiff's deceased father.

Plaintiff testified, in part, as follows:

"Q. Where does your wife, Mrs. Stella Wilson, live at this time? A. In Hill County.

"Q. On what property does she live? A. On the Wilson property down there.

"Q. On the property you have described here in your petition? A. Yes sir."

He testified that he had been on the property in question about nine times since his father's death.

"Q. What was your purpose for going there? A. For looking after the property and making repairs on it.

"Q. Tell the jury what repairs you have made? A. Well, one house on the place I put a floor in it and another house I screened the house and fixed it up and another I put windows in it but the house I put the floor in was for my individual use.

"Q. I will ask you then, the house you put the floor in, why did you put it in for? A. For my own personal use.

"Q. Did you put it there to enhance the rental value or for your wife and child to occupy? A. For my wife and child to occupy. * * *

"Q. You made those improvements with the idea of living in it? A. Yes sir. * * *

"Q. Had you made any improvements before you knew they were attempting to sell it? A. All of these improvements were made before.

"Q. I believe you testified you fixed the fences, barns and house? A. Yes sir, I did. * * *

"Q. But you put the floor in the other house because you were going to live there, —you were going there to live? A. Yes sir. * * *

"Q. You paid for it? A. Yes sir. * * *

"Q. Is it rented? A. All except this that I have down there as a homestead.

"Q. All but the house? A. The house and the land.

"Q. The sixty acres that Engledow— approximately sixty acres? A. Yes sir. * * *

"Q. You allege in your petition, Mr. Wilson, that Mrs. Wilson and your daughter live on this place? A. That is right.

"Q. They have actual physical occupancy of it? A. Yes sir. * * *

"Q. But they were renting this place you put the floor in, that you intend to make your home? A. I intend to make it my home when this house was vacant. At that time, at the time—at that time this house was occupied they was living in it and we repaired the floor with the intention for me making that my home.

"Q. When did these people get out of your house, in the fall of 1937? A. In the fall of 1937—when did they get out?

"Q. Yes sir. A. They haven't moved unless they moved in the last two or three days. * * *

"Q. For eighteen months, ever since the debts have been paid, you have been in position where you could have occupied that place? A. No.

"Q. Why not? A. Because the place was rented before my father's death.

"Q. It is rented for 1938 now, isn't it? A. Not the property that I claim down there. * * *

"Q. That land has not been partitioned off to you yet? A. No.

"Q. The other heirs haven't quit claimed it to you yet? A. No.

"Q. And you don't know whether you will wind up with that 60 or some other 60? A. No."

The plaintiff's wife testified in part, as follows:

"Q. Has Mr. Wilson discussed with you what he desires to do with that land? A. Yes sir.

"Q. What? A. That is to be our home.

"Q. Do you know of your own knowledge whether some of that has been partitioned off orally for your home? A. Well, in a way, yes, some of it.

"Q. How many acres? A. Sixty, I believe, or sixty two, right at sixty.

"Q. You have been living down there some? A. Yes.

"Q. Tell the jury how many times you have been there since the elderly Mr. Wilson's death. A. Well, I stayed down

there last summer quite awhile, and I have made at least a dozen trips.

"Q. Do you know of any improvements your husband made on any of the property there? A. Yes.

"Q. Which property? A. On the place for our home.

"Q. Did he—do you know who paid for that, whether he paid for it individually or whether the estate paid for it? A. He paid for it. * * *

"Q. Do you know? A. I do know; I was with him when he paid it.

"Q. Tell the jury was it his money or the estate's money? A. It was his money.

"Q. Is it your intention to reside down there? A. Yes sir, it is.

"Q. As your home? A. Yes sir.

"Q. Have you had that intention since he came into possession of that land? A. It is our intention, and has been, to make that our home.

"Q. Tell the jury what you have done down there. A. I have a cow and some chickens; I think twenty-five hens, and I have moved a housekeeping outfit down there.

"Q. Why is it you have had a room over at Mr. Engledow's instead of living in that house? A. The family that lives in the house that I am to live in couldn't get possession of their place, and they were to move Monday.

"Q. How long did you stay there on this last occasion? A. I went there the next day after Christmas and came back—

"Q. That family is just waiting to get possession of their other place? A. Yes sir.

"Q. Have you heard Mr. Wilson say to others over a period of years that he expected to make that his home? A. Yes sir.

"Q. Does he own any other property anywhere? A. We don't now."

It is true, as pointed out by defendants, that Wilson has been living in Sweetwater, Texas, for 17 years during which time he has been, and at the time of the trial was, employed by the Santa Fe Railway Company. During this time he has never lived on the property in controversy. Plaintiff also testified:

"Q. Did you intend to occupy it as a homestead? A. Yes sir.

"Q. Tell the jury when you intend to go there? A. I did not know what time I might have to go there on account of my wife's health and my health; I might have to go there most any time. * * *

"Q. I believe you have testified that you do not know what time you might have to move down there on account of the health of you and your wife? A. Yes sir.

"Q. Are you in bad health? A. Yes sir.

"Q. Is your wife in bad health? A. Yes sir.

"Q. Is your health seriously impaired, yours and your wife's? A. If you call high blood pressure serious, you might—

"Q. Likely to have to go ahead and move at any time? A. Likely to."

The plaintiff's wife testified that she had worked in Sweetwater some; that she had been voting in Sweetwater for about 18 years; that she had never voted in Hill County; that the Engledows looked after her cow and chickens on the Hill County farm in her absence.

From the foregoing and similar testimony, defendants conclude the testimony shows that whether plaintiff and his family will ultimately occupy the property in controversy depends entirely on the state of his health; that it shows if plaintiff's health becomes so bad he cannot stay in Sweetwater he intends to move to the farm, and if his health does not get worse he intends to keep his job and go on working in Sweetwater. Defendants further contend that the evidence shows the intention of the plaintiff to occupy the premises in controversy at a future time is contingent upon the state of plaintiff's health, and does not show a present intention to occupy the land as a homestead, except upon the happening of such contingency; and that acts of preparation for actual occupancy are not shown, from which defendants conclude the evidence does not raise the issues submitted to the jury.

In Gilmore v. Dennison, Tex.Com. App., 115 S.W.2d 902, Judge Hickman stated the applicable rule as follows: " * * * the rule has been established that in order to impress upon property a homestead character, in the absence of actual occupancy thereof, there must be an intention by the head of the family to reside upon it with his family as a home, coupled with some overt act of preparation evidencing that intention. Mere intention alone is not sufficient."

Applying the rule to the facts of that case he said: "The effect of Dennison's own testimony is that he intends at some indefinite time in the future to reside upon this property as a home, provided he becomes able to erect improvements thereon. No overt act evidencing that intention was testified to. Such testimony falls short of presenting a fact issue on the homestead question."

■ We recognize the quoted rule but we are convinced that the evidence in this case is sufficient to support a finding of a present intention to occupy the premises in controversy as a home as soon as possession can be obtained, if the evidence is not sufficient to show that such occupancy has already taken place. We think the fact that the plaintiff at one time testified, in substance, that he might have to move to the premises because of ill health does not have the effect of destroying testimony to the effect that plaintiff and his family intend to occupy the premises as a home as soon as possession can be obtained. Williams & Chastain v. Laird, Tex.Civ. App., 32 S.W.2d 502, 505, writ refused. We think it does not result, as a matter of law, from such testimony that the evidence merely shows that plaintiff "intends at some indefinite time in the future to reside upon this property as a home", provided his health becomes worse. Neither is evidence lacking in this case of overt acts showing preparation for occupancy of the disputed premises for the purpose of a home. Proof of intention, existing continuously since a time prior to the levy, to occupy the premises claimed as a homestead as soon as it can reasonably be done, together with preparation of the premises for such occupancy, without actual occupancy, we think is sufficient to justify plaintiff's homestead claim. Here there is evidence which, if believed, shows a very good reason for plaintiff's failure to sooner occupy the premises; that is, that the premises were occupied by a tenant of his father whose term had not expired until the time of trial. Furthermore, the record discloses evidence of occupancy of a portion of the premises by the plaintiff's wife and daughter prior to the levy of the execution, and prior to knowledge of the execution.

We overrule the proposition that plaintiff failed as a matter of law to introduce evidence raising the homestead issue. Brown v. Logan, Tex.Civ.App., 7 S.W.2d 189; Farmers Nat. Bank v. Coffman, Tex.

Civ.App., 79 S.W.2d 905, writ refused; Sigmond Rothschild Co. v. Moore, Tex. Com.App., 37 S.W.2d 121; 22 Tex.Jur. 70.

■ It has been definitely determined that the homestead exemption may be claimed in property in which the claimant has only an undivided interest and that, upon partition, the homestead exemption will be applied to the part set aside to the homestead claimant. Clements v. Lacy, 51 Tex. 150; Young v. Hollingsworth, Tex.Civ. App., 16 S.W.2d 844, writ refused; Foley v. Holtkamp, 28 Tex.Civ.App. 123, 66 S.W. 891, writ refused; Brown v. McLennan, 60 Tex. 43.

■ The defendants assert that the cause having been submitted to the jury on the two special issues quoted, and "preponderance of the evidence" having been defined as shown, it was error to direct the jury to answer the issues "yes" or "no", because the burden of proof was upon plaintiff to establish the affirmative of each of said issues and such direction by the court had the effect of requiring defendants to establish the negative of each of said issues by the preponderance of the evidence, thereby placing a greater burden on defendants than allowed by law. If the direction to answer said issues "yes" or "no" had the effect of informing the jury that a negative answer to said issues could not be made unless the negative thereof was shown by a preponderance of the evidence, the direction constituted reversible error. Gulf States Utilities Co. v. Moore, 129 Tex. 604, 106 S.W.2d 256. There was nothing in the preliminary instructions by the court remotely bearing upon this question. The definition was the usual one and is not challenged. The form of the issues was in literal compliance with the suggestions in Federal Surety Co. v. Smith, Tex.Com.App., 41 S.W.2d 210, 214. The jury was simply asked in each issue if they found a certain fact from a preponderance of the evidence. They were required to find that said fact was or was not established by a preponderance of the evidence. If the fact inquired about was not established by the preponderance of the evidence, the jury was required to answer the issue "no." The issues, as stated, could not have well been answered in any way except "yes" or "no" had the instruction been eliminated. The instruction has not been condemned by the Supreme Court and is distinguishable from those con-

demned in Federal Underwriters Exchange v. Rigsby, Tex.Civ.App., 114 S.W.2d 354, and Fidelity & Casualty Co. of New York v. Van Arsdale, Tex.Civ.App., 108 S.W.2d 550, wherein the jury was instructed, in substance, to answer the questions submitted as they found the facts to be from a preponderance of the evidence. The proposition is overruled.

It is contended that the judgment should be reversed because the issues submitted were evidentiary only and not ultimate issues. Their submission was objected to for that reason and the objection overruled. In Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S.W. 517, 522, the court said it was the duty of a litigant to present in special issues for the consideration of the jury "a fact or group of facts, which, if found by them from the evidence to be true, establishes in law some material issue presented by the pleading." In Texas & N. O. R. Co. v. Kveton, Tex.Civ.App., 75 S.W.2d 118, writ dismissed, it was held that the issues submitted, when taken together, presented the ultimate issues of fact declared on in the pleadings and supported by the evidence and their submission did not constitute reversible error. In Texas Co. v. Alamo Cement Co., Tex.Civ.App., 168 S.W. 62, 65, Judge Moursund said: "If the proof of the fact submitted is equivalent to proof of the ultimate fact—in other words, carries with it the same legal consequences—we see no objection to submitting it directly."

■ Unquestionably an affirmative answer to the issues submitted, that is, a finding of intention and preparation, established, as a matter of law, plaintiff's right of homestead. Under such situation, it is evident, we think, that, if defendants' contention be correct, the court's action in that respect was not prejudicial, and, if error, was not reversible error. St. Paul Fire & Marine Ins. Co. v. Westmoreland, Tex.Civ.App., 77 S.W.2d 265, affirmed 130 Tex. 65, 105 S.W.2d 203; Emerson v. Park, Tex.Civ.App., 84 S.W.2d 1100, writ dismissed; Nicholson v. Nicholson, Tex. Civ.App., 22 S.W.2d 514, 516; 41 Tex.Jur. 1020; Texas & N. O. R. Co. v. Kveton, Tex.Civ.App., 75 S.W.2d 118, 120, writ dismissed; Speer's Law of Special Issues, p. 139; McDaniel v. Orr, Tex.Com.App., 30 S.W.2d 489, 491; Constitution Indemnity Co. of Philadelphia v. Armbrust, Tex.Civ. App., 25 S.W.2d 176, writ refused.

The judgment of the trial court is affirmed.

## On Motion for Rehearing.

If it be conceded that the decision in Hough v. Grapotte, 127 Tex. 144, 90 S.W. 2d 1090, should be construed as definitely determining that the proper manner of submission of the issue of homestead would have been to inquire whether the land was plaintiff's homestead, instead of asking (1) whether plaintiff intended to occupy the land as homestead, and (2) whether he had made improvements for that purpose, the question remains whether the court's action in submitting the question in the manner last mentioned constitutes reversible error. The eminent author of the opinion in the Hough-Grapotte Case, under circumstances somewhat comparable to those of the instant case, held such submission did not constitute reversible error. First Nat. Bank in Stamford v. Jones, Tex.Civ.App., 59 S.W.2d 1103, 1105. An affirmative answer to the issues, as submitted (in connection with the undisputed evidence that plaintiff owned no other home, etc.), established, as a matter of law, that the land was Wilson's homestead. Skiles v. Shropshire, Tex.Civ.App., 50 S.W.2d 402; Id., 124 Tex. 462, 465, 77 S.W.2d 872; First Nat. Bank in Stamford v. Jones, supra. If the issue had merely inquired whether the land was plaintiff's homestead, then the court by explanation or definition would have been required to tell the jury, in effect, that it must find exactly what it did find, in answer to the two issues submitted, that is, (1) that plaintiff had the intention to make the land his homestead, and (2) that he had made improvements on the land for the purpose of occupying it as his home, before it could find the land to be plaintiff's homestead. Under such circumstances, we think it cannot be reasonably contended that the manner of submission, if erroneous, was harmful to defendant. Courts of Civil Appeals Rule 62a; Parker v. Naylor, 151 S.W. 1096, 1104, writ refused; Ft. Worth & D. C. R. Co. v. Amason, Tex.Com.App., 276 S.W. 162, 167; Kansas City M. & O. R. Co. v. Bomar, Tex. Civ.App., 207 S.W. 570; Hales v. Peters, Tex.Civ.App., 162 S.W. 386, 387, writ refused; Texas Cent. Ry. Co. v. Claybrook, Tex.Civ.App., 178 S.W. 580, writ refused; Benton v. Kuykendall, Tex.Civ.App., 160 S.W. 438, 443, writ refused; Speer's Special Issues, 241; 41 Tex.Jur. 1023,

1037, 1103. Also, see Texas & N. O. Ry. Co. v. Thompson, Tex.Com.App., 12 S.W. 2d 963, 966; Karr v. Cockerham, Tex.Civ. App., 71 S.W.2d 905, 909; Karr v. Cockerham, Tex.Civ.App., 107 S.W.2d 719, 723.

■ Under a slightly different state of facts it is often proper to submit substantially the same issue in somewhat different form. Mathematical accuracy cannot always be attained in the trial of a case. As said in Wright v. Traders & General Ins. Co., Tex.Com.App., 123 S.W.2d 314, 317: "Practically speaking there is no absolutism in procedure, especially in that branch of the trial procedure having to do with submitting causes upon special issues. Difficult problems in submission are not infrequent with the trial judge. Ft. Worth & D. C. Ry. Co. v. Rowe, [Tex.Civ.App., 69 S.W.2d 169], supra. As stated by Chief Justice Gaines speaking in another, but related, connection in Silliman v. Gano, 90 Tex. 637, 39 S.W. 559, 561, 40 S.W. 391: 'But the rules of procedure in the courts should be so framed as to secure substantial justice, and any oversight of the court or of counsel, which, within certain limitations, is not calculated to operate to the prejudice of the parties, and has not so operated, should be disregarded.'"

Further, and without questioning the soundness of the opinion in Hough v. Grapotte, supra, under the facts of that case it must be observed that the fact situation of the instant case is not in substantial respects comparable to the situation there presented. There "the sole controversy in the trial court hinged upon the domicile of Galbraith." [127 Tex. 144, 90 S.W.2d 1091.] A simple issue was submitted as to whether he was domiciled in Texas at a certain date. If we had before us a question of whether Wilson's homestead on a certain date was in Nolan County, or in some other county, a simple question so inquiring would be analogous to that presented in the Grapotte case.

■ Here we have a claim of homestead asserted in land that had not, for reasons disclosed, been actually occupied for such purpose. A state of facts is presented like that considered in Broadland v. City Nat. Bank of Corpus Christi, Tex.Civ.App., 15 S.W.2d 112, 113, wherein it is said: "In Texas actual occupancy of land is not absolutely essential to impress property with the homestead character, but property may become a home [homestead] by intention when such intention is accompanied by unmistakable acts that evidence the designation of a homestead." In so holding, it has been said that the courts have been actuated by a purpose to secure for impecunious persons the benefits of the homestead law in Texas. Cameron v. Gebhard, 85 Tex. 610, 22 S.W. 1033, 34 Am.St.Rep. 832; Conlee v. Merchants' & Planters' Lumber Co., Tex.Civ.App., 173 S.W. 586, 587, writ refused; Jolesch & Chaska Co. v. Hampton, Tex.Civ.App., 297 S.W. 271, 273, writ refused; 22 Tex.Jur. p. 59, sec. 36, et seq. As said in Espinoza v. Cocke, Tex.Com.App., 276 S.W. 1095, 1096: "A definite intention, in good faith, to occupy vacant property as a homestead by the head of a family who owns no other home is of controlling force when such intention is accompanied by preparatory acts in connection with the property definitely tending of themselves to show such intention and the good faith and reality thereof." Citing Dobkins v. Kuykendall, 81 Tex. 180, 183, 16 S.W. 743, and the Gebhard Case.

No rule of law is better established than the one stated by the various authorities but generally in somewhat different language as is evidenced by the above excerpts. Here it is undisputed that Wilson owned no other home. The "definite intention in good faith to occupy the property as a homestead" was clearly established by the issue submitted and the "preparatory acts" in connection therewith are established with the same definiteness. The trial court in his judgment has declared the only conclusion to be drawn from the existence of such facts, and from the record before us it is believed that any number of trials will arrive at the same conclusion. The point considered in the light of the whole record does not, in our opinion, present prejudicial error requiring reversal of the judgment of the trial court.

The motion for rehearing is overruled.

FUNDERBURK, J., dissenting.

FUNDERBURK, Justice (dissenting).

Special issue No. 1 inquired of the jury whether "it has been the intention of W. L. Wilson at all times since his father's death to make his share of his father's estate his homestead." Special Issue No. 2 inquired whether "W. L. Wilson made improvements on any of the land in question with his own funds for the purpose of using such as his home." Thus only, if at all,

was submitted to the jury the essential issue of homestead. To such manner of submission the defendant duly objected. To the first question, the objection was "that same was not an ultimate issue"; that "an intention alone is not sufficient to effect the homestead.status of the property in controversy in the absence of preparatory acts to make said property his homestead and comprehends the submission only of a piece-meal feature of the ultimate issue to be determined in this cause. The proper issue which should be submitted, if there is a necessity of the submission of any issue, being whether or not from a preponderance of the evidence the property in controversy is the homestead of the plaintiff."

The same objections were made applicable to special issue No. 2.

As to the action of the court in submitting said questions as issues, over the objection made, we said in our original opinion that "it was not prejudicial, and, if error, was not reversible error." In that conclusion the writer is now of the opinion we were in error.

I shall not discuss at any considerable length the question of. whether it was error to submit the issue, or issues, in the form submitted, over the objections made. About that there would seem to be no ground for a difference of opinion. Judge Hickman's opinion in Hough v. Grapotte, 127 Tex. 144, 90 S.W.2d 1090, 1091, would, alone, seem to be decisive. In that case it was argued that domicile is not an ultimate fact, but that the real ultimate fact issues are (1) residence and (2) intention of Galbraith to make the residence his home. The court's answer to that argument was: "The question has been many times determined contrary to this contention. Multiplicity of issues should be avoided and only those ultimate issues submitted which will form the basis of a judgment. The issues of residence and intention are merely elements of the controlling issue of domicile and were included in and disposed of by the answer to the more comprehensive issue." If a question of a person's domicile, as affected by his intention, is an ultimate issue of fact, the intention being but an element thereof, it would seem that a question of a person's homestead, as affected by his intention (as when the inquiry arises regarding property certainly once the home) or both intention and preparation (as when the inquiry arises as to property never physically occupied as a home), must be held to be the ultimate fact, and the "intention" or "intention and preparation" but the element or elements thereof.

In submitting a case to a jury upon special issues, is it error for the court to split up an issue and submit it in two or more questions calling for the finding of the several elements of the issue? In a particular case that may be convenient, and when no objection is made, there is an implied consent to such mode of procedure. Here, however, we must face the question as affected by full and constructive objections to such action. In City of Abilene v. Moore, Tex.Civ.App., 12 S.W.2d 604, 606, a negligence case, Judge Hickman, speaking for this court, said: "Where the combination of two facts is necessary to constitute negligence, and neither one of the facts stated alone would do so, it would not be required of the trial court that he single out each evidentiary fact and then group them himself after the jury had returned its answer. But where two facts must concur in order to constitute negligence, those facts should be grouped in order to have a finding on the ultimate issue, which is the negligence of the party." Cited as sufficient authority for the conclusion stated was the case of Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S.W. 517. By a strange quirk of misunderstanding the last named decision is, perhaps, the one most often cited as supporting propositions to the contrary. In St. Louis, S. F. & T. Ry. Co. v. Wilson, Tex.Com.App., 279 S.W. 808, 809, Fox v. Dallas Hotel Co., supra, was correctly interpreted and given an application making both cases direct authority in point upon the proposition that it is error to split up a single issue and submit the elements as separate issues. The court there also speaking of an issue of negligence said: "This manner of presenting the issue to the jury in the two questions was not only misleading, but was in violation of .the statute, which requires that each fact issue be distinctly submitted. Article 2189, R.C.S.1925."

Further authority is deemed unnecessary to establish these propositions: (1) that the ultimate issue in this case, which was submitted in two questions, was whether or not the property was the homestead of the plaintiff, and (2) the splitting of such issue and submitting it in two parts, constituted a violation of R S.1925, Art. 2189,

requiring, among other things, that issues shall be submitted "distinctly."

The question which, because of precedents to be found in decisions, is not so easy to determine, is whether, granting that there was error, may it properly be passed over as harmless? That question, as I view it, involves considerations affecting the very vitals of the principle of government by law. The law says that issues shall be submitted "distinctly." The law is violated by submitting one issue as two. Judgment of the court below (a ruling) was duly and seasonably invoked, to determine whether submitting a single issue as two was contrary to law. The ruling of the court, in response to the objection made, was of the nature of a judgment against the defendant. Defendant was put to the election of yielding to such erroneous judgment, or of seeking to have it reversed upon appeal, thereby incurring the hazard of liability for costs and expenses if he should fail. He has appealed and invoked the judgment of this court as to whether it is unlawful to submit one issue as two. We have said, in effect, it is unlawful, but since it does not appear to us that you have been injured, your appeal will avail you nothing.

Our action should be, I think, ruled by answer to the question: Does it appear affirmatively from the record beyond a reasonable doubt that appellant has not been injured? A violation of the law prescribing the procedure by which legal rights, or wrongs, are submitted to a court for adjudication is certainly of a nature reasonably calculated to cause injury. It is recognized that such is the test of material error; but when, by such test, it appears that an error is material the law raises a presumption of prejudicial effect. Bell v. Blackwell, Tex.Com.App., 283 S.W. 765; Williams v. Rodocker, Tex.Civ.App., 84 S.W.2d 556. Then it is that the rule becomes operative, that a reversal must result, unless it affirmatively appears beyond a reasonable doubt that it was not prejudicial to the party appealing.

Under such rule, it is true that the most material errors may sometimes be shown to have been harmless. It is necessary, however, that such showing be made from the record; as for example, where error has been committed in submitting issues of primary negligence but the record shows a fair unchallenged submission of issues of contributory negligence duly found against the appealing plaintiff.

If it be material error to submit a single issue as two issues, thus giving rise to the presumption of prejudicial effect, there is nothing in the record before us to show there was no prejudicial effect. That being undoubtedly true, then it must follow that if the error can properly be held to have been harmless, such conclusion must rest on the ground that the error was not material—that is, not reasonably calculated to prejudice any right of the parties and therefore not presumed to have done so.

This poses the question: Can a positive violation of the law governing the submission of issues to a jury ever properly be held to be immaterial, in the sense we are using that term? The answer, I think, should be "No." Such a proposition is contrary to elementary principles of justice. "Justice", it has been said, is "the rendering to every man his due; that end which ought to be reached in a case, by the regular administration of the principles of law involved as applied to the facts." 35 C.J. p. 434. It is to be observed from the definition, that justice is not the individual notion of the judge of what constitutes rendering what is due. On the contrary, "that end which ought to be reached in a case" is that reached only by the "regular administration of the principles of law involved as applied to the facts." The law declares that issues shall be submitted distinctly and separately. That was not done. Then it must follow that the end reached in this case, however right by other tests, was not reached by the test which justice requires, namely: "by the regular administration of the principles of law involved as applied to the facts."

Revised Statutes 1925, Art. 2197, in prescribing how communications may be made between judge and jury, is no more mandatory that communications may not be made in any other manner, than Art. 2189, in commanding that issues shall be submitted distinctly and separately, is mandatory that they shall not be submitted in any other way; yet, it has been held under the first named statute that when communications are made in any other way, then the error not waived and properly assigned requires a reversal. Texas Midland Ry. Co. v. Byrd, 102 Tex. 263, 115 S.W. 1163, 1164, 20 L. R.A.,N.S., 429, 20 Ann.Cas. 137. In the case cited, it was said: "It seems to us

that in deciding this question we are not required to enter into a discussion of the question of how a conference between the judge and the foreman would have affected a verdict if at all." In Gerneth v. Galbraith-Foxworth Lumber Co., Tex.Com. App., 38 S.W.2d 775, it was held that a violation by the trial judge of said statute by communicating with the jury outside open court was reversible error regardless of the question of injury. Why single out one statutory provision and say that a violation of same, not waived, shall, regardless of any question of injury, require a reversal; but as to the violation of another statute equally mandatory in purport, since it does not occur to the court that prejudice could have resulted, say the error is harmless? It seems to me the court should consider that by the very existence of the law, it has been predetermined by the lawmaking department of the government that a violation will be prejudicial.

Texas is not without precedents which should constitute very impressive object lessons teaching the baneful consequences that may be expected to flow from judgments of the courts to the practical effect that the law may be violated with impunity. For example, we once had a system of pleading, the finest, perhaps, ever devised. Today the words of the statutes providing that system are the same, but without meaning or force. The system provided for two kinds of interlocutory judgments—one, the judgment of the court as to whether a pleading as a matter of *substance* was sufficient to state a cause of action, or ground of defense; the other, the judgment of the court, whether a pleading as to *manner* and *form* was sufficient to state a cause of action, or ground of defense. From the standpoint of preserving the system of pleading, a judgment upon a special exception was far more important than a judgment on general demurrer. A few times the truth has been perceived that a special exception or demurrer includes a general exception or demurrer. Warner v. Bailey, 7 Tex. 517; Snow v. Gallup, 57 Tex.Civ.App. 572, 123 S.W. 222; Harris v. N. Parker & Son, Tex.Civ.App., 23 S.W.2d 745. In the first case cited, the different functions of general demurrers and special exceptions were stated, and as to the former, the court said that the question which a general demurrer raises "is, whether the pleading demurred to, discloses the existence of any cause of action or ground of defence" and as to a special exception, *"not only to question the existence of any cause of action, or ground of defence, but* [in addition] *to point out, particularly, wherein the pleading is defective."* (Italics ours). The law laid down the requisites of a good pleading not only as to substance, but as to manner and form of stating it and furnished the means by which it could be enforced. Then some court not, perhaps, perceiving the true nature or importance of a special exception held, in effect, that although the lower court had erred in overruling a special exception, the error, not being waived, but being duly assigned upon appeal, was declared harmless. In so holding that court not so understanding, perhaps, but none-the-less certainly, set a precedent as supporting the proposition that although a party to a suit may duly invoke the judgment of the court as to whether his adversary's pleading is in manner and form sufficient to state a cause of action or ground of defense, as the case may be, and judgment is given that it is sufficient when, as a matter of law, it is not, yet such party may not incur the costs of appeal to have such erroneous decision of law reviewed, except upon the hazard that the appellate court, although agreeing that the judgment was contrary to law, may never-the-less refuse to correct it. Thus began the failure of the courts to enforce the laws of pleading, with the result that now the right of a party to have his adversary plead in proper manner or form is unenforcible.

Pretty much in like manner the law providing for the submission of special issues is for this reason with others being rendered ineffective to accomplish the purposes of the law. There is no common understanding by the Bench and Bar as to what constitutes an "issue" to be submitted to a jury.

If one issue having two elements may be submitted as two issues, then one issue having half a dozen elements may be submitted as a half a dozen issues. The defendant in such a case, where plaintiff's issues are so split, finds himself in the trial under the necessity to argue, not the deficiencies in the evidence to establish a single issue or the evidence which rebuts a single issue; but the deficiencies to establish six several issues or the evidence to rebut same. In my opinion the requirement of the law that issues be submitted

distinctly confers a legal right upon all parties to a lawsuit to have the issues submitted distinctly. The deprivation of such a right in the trial of a case by a properly invoked ruling of the court should itself alone be regarded as prejudicial.